**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 30, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SANTA FE ALLIANCE FOR PUBLIC
HEALTH AND SAFETY; ARTHUR
FIRSTENBERG; MONIKA STEINHOFF,

     Plaintiffs - Appellants,

v.

CITY OF SANTA FE, NEW MEXICO;
HECTOR H. BALDERAS, Attorney
General of New Mexico; UNITED
STATES OF AMERICA,

     Defendants - Appellees.

No. 20-2066

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:18-CV-01209-KG-JHR)**
_____

Theresa Dawn Truitt Kraft, Salisbury, Maryland (Erika E. Anderson, The Law Offices of
Erika E. Anderson, Albuquerque, New Mexico, and Jonathan Diener, Mule Creek, New
Mexico, on the briefs), for Plaintiffs – Appellants.

Jack Starcher, Appellate Staff Civil Division Attorney (Ethan P. Davis, Acting Assistant
Attorney General; John C. Anderson, United States Attorney; Scott McIntosh, Appellate
Staff Civil Division Attorney, with him on the brief), U.S. Department of Justice,
Washington, DC, for Defendant – Appellee United States of America.

Marcos D. Martinez, Senior Assistant City Attorney, Santa Fe, New Mexico, for
Defendant – Appellee City of Santa Fe.

Neil R. Bell (Gregory Ara Chakalian on the brief), Office of the New Mexico Attorney
General, Santa Fe, New Mexico), for Defendant – Appellee Hector H. Balderas.

_____

Before **MATHESON**, Circuit Judge, **LUCERO**, Senior Circuit Judge, and **McHUGH**, Circuit Judge.

_____

**McHUGH**, Circuit Judge.

_____

Plaintiffs/Appellants Santa Fe Alliance for Public Health & Safety, Arthur Firstenberg, and Monika Steinhoff (collectively the "Alliance") advance a bevy of claims asserting Section 704 of the Telecommunications Act of 1996 ("TCA"), New Mexico's Wireless Consumer Advanced Infrastructure Investment Act ("WCAIIA"), the Amendments to Chapter 27 of the Santa Fe City Code ("Amendments to Chapter 27"), and three proclamations by the Santa Fe mayor violate due process, the Takings Clause, and the First Amendment. Through its amended complaint, the Alliance contends the installation of telecommunications facilities—primarily cellular towers and antennas—on public rights-of-way expose its members to dangerous levels of radiation. The Alliance further contends these legislative and executive acts prevent it from effectively speaking out against the installation of new telecommunications facilities. The United States moved to dismiss under Federal Rules of Civil Procedure 12(b)(1), and (b)(6), and the City of Santa Fe ("Santa Fe") moved to dismiss under Rule 12(b)(6). The district court concluded that while the Alliance pled sufficient facts to establish standing to assert its constitutional claims, the Alliance failed to allege facts stating any constitutional claim upon which relief could be granted. The district court dismissed the Alliance's claims as against all defendants, including Hector A. Balderas, the New Mexico Attorney General.

2

We affirm the district court's dismissal of the Alliance's constitutional claims, albeit on partially different grounds. We hold the Alliance lacks standing to raise its takings claim and its due process claims not premised on an alleged denial of notice. This is because the alleged injuries supporting these claims are not "fairly traceable" to the passage of the TCA, WCAIIA, the Amendments to Chapter 27, or the mayoral proclamations. We further hold that while the Alliance satisfies the threshold for standing as to its First Amendment claims and its procedural due process claim premised on the WCAIIA and the Amendments to Chapter 27 denying it notice, the district court properly dismissed these claims under Federal Rule of Civil Procedure 12(b)(6).

## I.    BACKGROUND

### A.    The Alliance's Amended Complaint

The Alliance's membership consists of Santa Fe residents concerned about the health and environmental effects of radio-frequency emissions from telecommunications facilities installed on public rights-of-way. The Alliance alleges the radio-frequency emissions contain dangerous levels of radiation. The Alliance further alleges that exposure to radio-frequency emissions resulted in its members experiencing the following health problems: headaches, nausea, insomnia, tinnitus, seizures, cancer, fatigue, neurological issues, respiratory issues, cardiac issues, laryngospasms, numbness in extremities, high blood pressure, and internal bleeding. As a result of installation of telecommunications facilities and the accompanying exposure to radiation, many Alliance members have fled their homes, abandoned

3

their businesses, and either moved to remote sections of Santa Fe or taken up residence in their vehicles. The increasing presence of telecommunications facilities also constrains the ability of Alliance members to travel within Santa Fe city limits and to access government buildings and governmental services. The Alliance contends the impact from radio-frequency emissions will worsen as telecommunications companies upgrade the network in Santa Fe from 4G to 5G and as citizens retrofit their residences into smart homes.

The Alliance attributes some of the rapid growth in telecommunications facilities on the public rights-of-way in Santa Fe to a series of federal, state, and local legislative enactments, as well as the three proclamations by the mayor. The amended complaint alleges the TCA precludes localities from regulating the placement and construction of telecommunications facilities based on the "environmental effects" of radio-frequency emissions. *See* 47 U.S.C. §§ 332(c)(7)(B)(iv). The Alliance contends the New Mexico Legislature passed the WCAIIA, exempting the installation of new telecommunications facilities on public rights-of-way from local land use review. Further, the Alliance asserts that Santa Fe, through the Amendments to Chapter 27, repealed (1) its land use regulations pertaining to radio-frequency emissions and public rights-of-way; and (2) provisions requiring notice to the public before installation of a telecommunications facility on a public rights-of-way. Finally, the amended complaint alleges the Santa Fe mayor issued three proclamations, suspending application of the Santa Fe Land Development Code to requests by

4

telecommunications companies to build telecommunications facilities. The Alliance attributes the construction of seven short cell towers to the mayoral proclamations.

The Alliance filed a twenty-two-count amended complaint challenging the legislation and the mayoral proclamations. The amended complaint names as defendants the United States; Hector Balderas, the New Mexico Attorney General; and Santa Fe.

Regarding the TCA, Count Eighteen raises a Fifth Amendment due process claim, arguing Congress lacked the authority to (1) delegate authority to the Federal Communications Commission ("FCC") to be the sole regulatory authority over radio-frequency emission levels; (2) preempt states and localities from adopting their own regulations on radio-frequency emission levels; and (3) prohibit states from providing legal remedies for injuries from radio-frequency emissions. Meanwhile, Count Nineteen contends Section 704 of the TCA, by prohibiting local government officials from relying upon any speech regarding the health impacts of radio-frequency emissions when reviewing applications for new telecommunications facilities, violates the First Amendment because it restricts the ability of the public to speak about the health impacts of radio-frequency emissions. Finally, Count Four alleges Section 704 of the TCA infringes the Alliance's First Amendment right to petition the government and access the courts.[1]

---

[1] Additionally, Count Seventeen sought a declaration that the TCA did not preclude a locality from considering "health" effects when approving or denying the placement of telecommunications facilities because impacts on human health are not an "environmental effect" within section 332(c)(7)(B)(iv) of Title 47 of the United

The amended complaint advances four claims against the WCAIIA and the Amendments to Chapter 27. Count One alleges Fourteenth Amendment due process violations based on both provisions eliminating public notice requirements before approval of a new telecommunications facility. Count Three raises a Fifth Amendment Takings Clause claim, alleging the placement of radio-frequency emitting telecommunications facilities on the public rights-of-way rendered homes and businesses "uninhabitable and unusable." App., Vol. I at 50. Count Four alleges the WCAIIA and the Amendments to Chapter 27 infringe on the Alliance's access to courts and its ability to assemble and to petition the government, in violation of the First Amendment. Finally, Count Twenty asserts the Amendments to Chapter 27 violate the Alliance's First Amendment right to free speech because they precluded the relevant city boards from regulating telecommunications facilities based on the health effects of radio-frequency emissions.

Lastly, the Alliance raises one federal constitutional claim, Count Two, relative to the mayoral proclamations, asserting a Fourteenth Amendment violation of procedural and substantive due process. In support of this claim, the Alliance alleges Santa Fe, in accord with the proclamations, signed contracts with a telecommunications company permitting the installation of telecommunications

---

States Code. To the extent Count Seventeen advances a claim for relief rather than a mere legal argument supporting the Alliance's other claims against the TCA, it is not a constitutional claim, for it does not invoke any constitutional provision.

facilities without any notice to the public and that operation of these facilities endangers the life, liberty, and property interests of Alliance members.[2]

### B.  *Procedural History*

The United States filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (b)(6), and the City of Santa Fe filed a motion to dismiss under Rule 12(b)(6). The New Mexico Attorney General, meanwhile, preserved a failure to state a claim defense in its answer to the Alliance's amended complaint; however, the New Mexico Attorney General never filed a Rule 12(b) motion to dismiss.

Nine months after completion of briefing on the motions to dismiss, the district court issued a memorandum opinion and order and a final judgment dismissing all counts of the amended complaint as against all three defendants.[3] The district court

---

[2] Additional counts in the amended complaint raised claims under state law and the Santa Fe City Code. After concluding the Alliance failed to state any constitutional claims on which relief could be granted, the district court dismissed all constitutional claims and declined to assert supplemental jurisdiction. The Alliance does not contest the district court's decision to decline supplemental jurisdiction over the non-federal claims. Counts Fifteen and Sixteen, about which the Alliance does not advance any specific arguments on appeal, sought general injunctive relief against the WCAIIA, the Amendments to Chapter 27, and the mayoral proclamations.

[3] In issuing its memorandum opinion and order and final judgment, the district court committed two procedural errors. First, during the nine months between completion of briefing on the motions to dismiss and its ruling, the Alliance moved for a preliminary injunction and the parties completed briefing on this motion. The district court, however, did not acknowledge the pending preliminary injunction motion, neither ruling upon it nor explicitly terminating the Alliance's motion. Second, although the New Mexico Attorney General never moved to dismiss under Rule 12(b)(6), the district court acted as though such a motion pended. This is problematic where the New Mexico Attorney General lacked any means for seeking

addressed the United States' Rule 12(b)(1) motion first, concluding that while the Alliance lacked standing to bring claims under any provision of the TCA, it satisfied the standing threshold relative to its constitutional claims. Turning to the merits, the district court first addressed the Alliance's Fifth and Fourteenth Amendment due process claims—Counts One, Two, and Eighteen. Relative to Santa Fe and the New Mexico Attorney General, the district court concluded these actors did not violate the Alliance's procedural or substantive due process rights because the TCA preempted state and local officials from considering the health effects of radio-frequency emissions in compliance with FCC standards. Next, the district court analyzed the Alliance's Count Three takings claim relative to the WCAIIA and the Amendments to Chapter 27, rejecting the claim on the ground that neither New Mexico nor Santa Fe physically occupied or regulated the property of any Alliance member. The

dismissal at this juncture in the proceedings because (1) he waived the right to file a Rule 12(b) motion by filing an answer, *see* Fed. R. Civ. P. 12(b) (a motion asserting a Rule 12(b) defense "must be made before pleading if a responsive pleading is allowed"); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Fed. Practice and Procedure* § 1357 at 408 (3d ed. 2004) ("Technically . . . a post-answer Rule 12(b)(6) motion is untimely and the cases indicate that some other vehicle, such as a motion for judgment on the pleadings or for summary judgment, must be used to challenge the plaintiff's failure to state a claim for relief."); and (2) a Rule 12(c) motion would have been premature because the pleadings were not closed where the other two defendants filed Rule 12(b) motions and had not filed answers, *see* Fed. R. Civ. P. 12(c) ("*After the pleadings are closed* . . . a party may move for judgment on the pleadings." (emphasis added)); *see also Gorenc v. Klaassen*, No. 18-2403-DDC-JPO, 2019 WL 2523566, at *2 (D. Kan. Jun. 19, 2019) (collecting authorities standing for the proposition that the pleadings are not "closed" until all defendants file an answer). Although the Alliance mentions these two issues in its briefing, and we agree the district court erred, the Alliance does not seek relief in the form of remand.

district court then addressed the Alliance's First Amendment claims, observing that Alliance members frequently spoke against new telecommunications facilities and holding the Alliance had not stated valid claims because (1) nothing in the TCA, WCAIIA, or the Amendments to Chapter 27 regulated speech; and (2) the First Amendment does not include the right to have local officials adopt a speaker's preferred position.

The Alliance timely appealed. The Alliance seeks review of the district court's dismissal of its constitutional claims. The United States, the New Mexico Attorney General, and Santa Fe defend the district court's dismissal of the Alliance's amended complaint, with the United States also reasserting its argument that the Alliance lacks standing to bring its claims implicating the TCA.

## II.    DISCUSSION

We begin our analysis with the governing standard of review and an overview of the relevant federal, state, and local laws pertaining to the regulation, approval, and construction of new telecommunications facilities. Thereafter, we address whether the Alliance satisfied the threshold for standing at the motion to dismiss stage. Lastly, we turn to whether the claims that survive our standing analysis state a claim upon which relief may be granted.

### A.    *Standard of Review*

Where a district court rules on a Federal Rule of Civil Procedure 12(b)(1) motion without taking evidence, we apply a de novo standard of review. *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 877 (10th Cir. 2017). We also "review a district

court's rulings on Article III standing de novo." *Id.* at 878 (internal quotation marks omitted).

Similarly, this court reviews de novo a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014). "[A]ll well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (quotation marks omitted). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B.     *Relevant Laws Governing New Telecommunications Facilities*

Three tiers of laws—federal, state, and local—regulate the development and installation of telecommunications facilities. We describe aspects of each tier, as relevant to this appeal.

### 1.     Telecommunications Act of 1996

Congress enacted the TCA "to promote competition and higher quality in American telecommunications services and to 'encourage the rapid deployment of

10

new telecommunications technologies.'" *City of Rancho Palos Verdes v. Abrams*, 544

U.S. 113, 115 (2005) (quoting Telecommunications Act of 1996, Pub. L.

No. 104-104, purpose statement, 110 Stat. 56, 56 (1996)). To further this goal, the

TCA struck a balance between preserving "'the traditional authority of state and local

governments to regulate the location, construction, and modification' of wireless

communications facilities like cell phone towers" and creating uniform standards

governing new telecommunications facilities. *T-Mobile S., LLC v. City of Roswell*,

574 U.S. 293, 300–01 (2015) (quoting *City of Rancho Palos Verdes*, 544 U.S.

at 115). While the TCA did not infringe on a state's or locality's ability to enforce

zoning laws governing items such as boundary-line offsets and aesthetics, it did

impose "five substantive limitations" on the regulation of telecommunications

facilities. *City of Arlington v. FCC*, 569 U.S. 290, 294 (2013).

As highlighted by this appeal, one area of tension regarding the expansion of

wireless services has been public opposition to exposure to radiation from radio-

frequency emissions. Section 332(c)(7)(B)(iv) of Title 47 of the United States Code,

also referred to as Section 704 of the TCA, addressed the tension and possibility of

varying standards governing radio-frequency and radiation emissions from

community to community. The provision states:

> No State or local government or instrumentality thereof may regulate
> the placement, construction, and modification of personal wireless
> service facilities on the basis of the *environmental effects of radio
> frequency emissions to the extent that such facilities comply with the
> [FCC's] regulations* concerning such emissions.

47 U.S.C. § 332(c)(7)(B)(iv) (emphasis added). Consistent with this preference for a uniform standard and delegation of authority, the FCC has promulgated regulations establishing the maximum permissible level of radio-frequency, radiation emissions from telecommunications facilities. 47 C.F.R. § 1.1310.

Recognizing that some localities might resist or subvert the limitation placed on their ability to regulate radio-frequency emissions, the TCA requires that a locality's denial of a telecommunications company's request to construct a telecommunications facility "be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). In enforcing this requirement, the Supreme Court stated, "[i]n order to determine whether a locality's denial was supported by substantial evidence . . . courts must be able to identify the reason or reasons why the locality denied the application." *T-Mobile S., LLC*, 574 U.S. at 300. And where a locality fails to support its denial with substantial evidence, the telecommunications company may seek redress in state or federal court. 47 U.S.C. § 332(c)(7)(B)(v).

## 2.  Wireless Consumer Advanced Infrastructure Investment Act

Similar to the TCA, the WCAIIA restricts a locality's ability to regulate some telecommunications facilities.[4] *See* N.M. Stat. Ann. § 63-9I-4(B). After enactment of

---

[4] No party points us to a decision by a New Mexico court interpreting the WCAIIA, and we have not located such a decision. Accordingly, we rely exclusively on the WCAIIA's text to understand its import relative to the regulation of new telecommunications facilities.

the WCAIIA, localities in New Mexico may no longer subject "small wireless facilities"—cellular antennas and extensions with volume less than six cubic feet and that are attached to and do not extend more than ten feet above an existing utility pole or structure in a public right-of-way—to any local "zoning review or approval." N.M. Stat. Ann. § 63-9I-4(C); *see also* N.M. Stat. Ann. § 63-9I-2(P)(1) (defining "small wireless facility"). Rather, unless a telecommunications company proposes to place a "small wireless facility" in a "historic district" or a "design district," a locality, while able to impose fees for the permitting process and for access to the public right-of-way, lacks the authority to preclude installation of the facility. *See* N.M. Stat. Ann. §§ 63-9I-4(B), (D); *see also* N.M. Stat. Ann. § 63-9I-3(H).

**3.      Amendments to Chapter 27 of the Santa Fe City Code**

In November 2016 and August 2017, the Santa Fe City Council passed ordinances amending Chapter 27, the chapter governing telecommunications facilities in public rights-of-way. As a result of these amendments, the City Code establishes a system whereby telecommunications companies can apply for franchises to erect telecommunications facilities on the public rights-of-way. Santa Fe City Code § 27-2.4. A "director" reviews and negotiates the franchise applications before submitting an application to the "governing body" for adoption. *Id.* at § 27-2.4(B). Once the governing body adopts a franchise agreement, the telecommunications company must pay Santa Fe 2% of its gross charges for services provided within Santa Fe. *Id.* at § 27-2.5.

Regarding land use regulations, the August 2017 amendments established a process for creating uniform standards governing new telecommunications facilities on public rights-of-ways, phasing out facility-specific land-use-review at public meetings:

> the construction of new telecommunications facilities that conform to design parameters established from time to time by the land use department and are approved for use following a public hearing in the historic districts by the historic districts review board or outside the historic districts by the planning commission, provided that notice of the use of the approved design and of the proposed location is submitted to the city prior to commencement of the work and the city approves the proposed location of the facilities.

*Id.* at § 27-2.19(C). The Santa Fe City Code also recognizes the impact of the TCA, stating, "[t]he planning commission may not regulate the placement of telecommunications facilities on the basis of the environmental effects of radio frequency emissions where such telecommunications facilities comply with 47 C.F.R. 1.1310 et seq." *Id.* at § 27-2.19(E)(3).

## C.     *Standing*[5]

First, we outline the law governing the threshold inquiry of standing. Then, we apply this governing body of law to each type of claim raised by the Alliance.

---

[5] The Alliance contends this court cannot consider standing relative to its constitutional claims because the district court concluded the Alliance satisfied the standing threshold and the United States did not file a cross-appeal. This argument ignores well-established, black-letter law. The issue of Article III standing implicates federal jurisdiction and is a matter this court *must* consider *sua sponte*. *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 942 (10th Cir. 2003).

14

### 1. Governing Law

We address standing on a claim-by-claim basis; a plaintiff may have standing to bring some, but not all, claims raised in a complaint. *See Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1279 (10th Cir. 1998). The Alliance, as the plaintiff invoking the federal court's jurisdiction, "bears the burden of establishing standing as of the time [it] brought this lawsuit and maintaining it thereafter." *Carney v Adams*, 141 S. Ct. 493, 499 (2020). To sustain this burden, a plaintiff must allege it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Our analysis here focuses on the first and second requirements from *Spokeo*. On the first requirement, "[t]o establish injury in fact, a plaintiff must show that [it] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). An injury is "concrete" if it "actually exist[s]" and is "'real'" rather than "'abstract.'" *Id.* (quoting Webster's Third New International Dictionary 472 (1971)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). An injury is "imminent" if it is "certainly impending." *Clapper v Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (first quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010), then quoting *Lujan*, 504 U.S. at 565 n.2).

15

On the second requirement, to show that an injury is "fairly traceable" to the challenged conduct, a plaintiff must allege "a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005). As part of this showing, a plaintiff must establish that its injury was "not the result of the independent action of some third party not before the court." *Id*. (quoting *Lujan*, 504 U.S. at 560). This showing, however, does not require a plaintiff to establish that the defendant was the proximate cause of its injury. *Id*. Nor does it require a showing that a "defendant's actions are the very last step in the chain of causation." *Bennett v. Spear*, 520 U.S. 154, 169 (1997). Rather, at the motion to dismiss stage, a plaintiff can satisfy the "fairly traceable" requirement by advancing allegations which, if proven, allow for the conclusion that the challenged conduct is a "but for" cause of the injury. *Petrella v. Brownback*, 697 F.3d 1285, 1293 (10th Cir. 2012) (citing *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 74–78 (1978)).

2.     **Application**

     a.     *Takings claim*

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not be taken for public use, without just compensation." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005) (citation and quotation marks omitted). In Count Three, the Alliance contends the WCAIIA and the Amendments to Chapter 27, by facilitating the placement of

16

telecommunications facilities on the public rights-of-way, effect a taking of its

members' homes and businesses. Specifically, the Alliance alleged that its members:

> are already refugees from cell towers and antennas and have already lost previous homes and businesses due to their proximity. The award of franchises by the City, and their exemption from land use regulations by the State, for the placement of wireless telecommunications facilities on the sidewalk directly in front of Plaintiffs' homes and businesses will render their present homes and businesses similarly uninhabitable and unusable and is an unlawful confiscation of property without compensation.

App., Vol. I at 50.

As an initial matter, to the extent the Alliance seeks redress for alleged *future*

losses of homes and business, the taking had not occurred at the time the Alliance

filed its amended complaint. Thus, any injury is speculative. And even if the

placement of telecommunications facilities on public rights-of way could constitute a

taking of adjoining private property, no just compensation was due to any particular

individual for a yet-to-occur taking. *See Miller v. Campbell Cnty.*, 945 F.2d 348, 354

n.9 (10th Cir. 1991) (concluding taking did not occur when county passed resolution

that would lead to taking of home but "rather the taking occurred when the plaintiffs

were actually required permanently to vacate their premises"); *see also SK Fin. SA v.

La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272, 1278 (10th Cir. 1997) (takings

claim not ripe until denial of property right is final). Therefore, we lack jurisdiction

to consider Count Three relative to future takings. *See Nat'l Park Hosp. Ass'n v.

Dep't of Interior*, 538 U.S. 803, 808 (2003) ("The ripeness doctrine is 'drawn both

from Article III limitations on judicial power and from prudential reasons for

17

refusing to exercise jurisdiction.'" (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993))).

Turning to the aspect of Count Three based on Alliance members already leaving their homes and business, here the Alliance alleges a specific injury that satisfies the first requirement for standing stated in *Spokeo*. However, the Alliance has not satisfied the second *Spokeo* requirement—that the injury is "fairly traceable" to the WCAIIA and the Amendments to Chapter 27. While these two legislative acts made it slightly easier for telecommunications companies to obtain approval to construct new telecommunications facilities, the Alliance fails to allege facts capable of showing that "but for" these two legislative acts Santa Fe would not have approved the construction of the telecommunications facilities at issue. Notably, the Alliance does not allege members of the Santa Fe boards in charge of land use and zoning/planning were prepared to deny approval for new telecommunications facilities in the absence of the adoption of the WCAIIA and the Amendments to Chapter 27. Put another way, the allegations in the amended complaint do not create a substantial likelihood that construction of the telecommunications facilities causing Alliance members to leave their homes and businesses would not have occurred but for passage of the WCAIIA and the Amendments to Chapter 27. Therefore, we hold the Alliance failed to allege facts capable of satisfying the second requirement for standing under *Spokeo*.

*b.* *Due process claims*

Count One alleges the WCAIIA and the Amendments to Chapter 27 violate procedural and substantive due process. The substantive due process aspect of this claim hinges on the Alliance's contention that newly constructed telecommunications facilities present a threat to the health, life, and property of Alliance members. For the same reasons the Alliance's takings claim based on completed takings fails to satisfy the second *Spokeo* requirement for standing, so too does the substantive due process aspect of Count One. Simply put, no allegation in the amended complaint supports the inference Santa Fe would not have approved new telecommunications facilities absent passage of the WCAIIA and the Amendments to Chapter 27.

We, however, reach a different conclusion as to the procedural due process aspect of Count One. The Alliance alleged that, as a result of these legislative acts, its members no longer receive notice prior to the approval of a specific telecommunications facility. This in turn, the Alliance alleges, deprives its members of an opportunity to be heard in opposition to further development of telecommunications facilities. While we discuss in Section III(D)(1) whether the Due Process Clause entitles the Alliance to the notice and opportunity to be heard it seeks, there can be no question the WCAIIA and the Amendments to Chapter 27 have directly altered the process used by Santa Fe to approve new telecommunications facilities. Specifically, the WCAIIA limits the ability of localities to regulate "small wireless facilities" in the public rights-of-way. N.M. Stat. Ann. § 63-9I-4(B), (C); *see also* N.M. Stat. Ann. §63-9I-3(H). And the Amendments to Chapter 27 altered Santa

19

Fe's process for approving telecommunications facilities—creating a streamlined process where Santa Fe peremptorily adopts guidelines for telecommunications facilities rather than reviewing individual applications for the construction of new facilities at meetings open to the public. *Santa Fe City Code* § 27-2.19(C). Therefore, the Alliance has satisfied the standing requirements relative to its Count One claim that the WCAIIA and the Amendments to Chapter 27 deprive its members of notice and an opportunity to be heard.

Turning to Count Eighteen, there the Alliance raises a procedural and substantive due process claim against the TCA. The Alliance alleges the TCA, by giving authority to the FCC to regulate radio-frequency emissions, preempts state and local regulation of those emissions, as well as the ability of state and local authorities to provide legal remedies for injuries attributable to radio-frequency, radiation emissions. We hold the Alliance lacks standing to advance this claim. The claim is contingent on New Mexico and/or Santa Fe, in the absence of the TCA, regulating radio-frequency emissions to a greater degree than the FCC does through 47 C.F.R. § 1.1310. But no allegations in the amended complaint make such an inference plausible. In fact, the amended complaint contains allegations suggesting New Mexico, although possessing knowledge about the dangers of radio-frequency emissions prior to passage of the TCA, did not enact measures to protect its citizens from radiation emanating from telecommunications facilities. *See* App., Vol. I at 13 (alleging that New Mexico has known for forty years that radio-frequency emissions are injurious). Accordingly, the amended complaint does not support the inference

20

that but for the TCA, Alliance members could successfully bring suit for injuries they attribute to radio-frequency emissions.[6]

Finally, in Count Two, the Alliance contends that three mayoral proclamations violated procedural and substantive due process by allowing for the construction of new telecommunications facilities without notice to the public. As background specific only to this count, in November 2017, the mayor declared an "emergency" in Santa Fe based on "insufficient telecommunications capacity." The proclamation authorized Santa Fe officials to "work with Verizon Wireless to install temporary and/or mobile wireless telecommunications facilities on City property pending review and approval of fixed wireless facilities within the City." App., Vol. I at 138. In December 2017, the mayor issued a second proclamation and a third proclamation, which are nearly identical to the November 2017 proclamation.

---

[6] The concurrence concludes we set "too high a barrier for most plaintiffs to ever satisfy" and we "insulate the federal government's efforts to materially shape the decisions of local governments." Concurrence Op. at 2. We are not unsympathetic to the concurrence's concern about shielding federal legislation from review where a local government, rather than the federal government, is the final actor. But we do not review the amended complaint in a vacuum where local governments have always been constrained by the TCA. Not only, as the concurrence suggests, could the Alliance have alleged that local decision makers were inclined to reject applications for new telecommunications facilities absent the TCA but the Alliance also could have alleged instances, pre-TCA, where local officials, either in Santa Fe or elsewhere, rejected applications for new telecommunications facilities based on health effects. The amended complaint, however, alleges neither. Thus, we are left to speculate whether any local board would conclude the harms from the health effects alleged by the Alliance outweigh a community's needs for and the benefits stemming from upgraded wireless communication services.

21

We conclude the Alliance lacks standing to advance its substantive due process claim based on the mayoral proclamations. Although the mayoral proclamations may have expedited the construction of certain telecommunications facilities, there is nothing in the amended complaint allowing for the inference that the same or similar facilities would not have been constructed but for the mayoral proclamations. Rather, the amended complaint repeatedly contends telecommunications facilities will be virtually everywhere, at least in urban settings, as the country transforms to a 5G network. The amended complaint goes so far as to allege that each wireless carrier operating in an area plans to install cellular towers "every 100 meters in every urban area in the world." *Id.* at 14. Thus, it cannot be said that the mayoral proclamations are the "but for" cause of the construction of new telecommunications facilities and the Alliance's members' accompanying exposure to radio-frequency emissions.

We also conclude the Alliance lacks standing to advance its procedural due process claim based on the mayoral proclamations. On this claim, we hold the Alliance fails to allege an injury fairly traceable to the mayoral proclamation. As alleged in Count One, the August 2017 Amendments to Chapter 27 eliminated notice and hearing requirements for the approval of specific new telecommunications facilities. Therefore, the mayoral proclamations could not have produced any further injury regarding the elimination of notice and hearing requirements. In this sense, the Alliance cannot allege either an injury from the mayoral proclamations or that any lack of notice is fairly traceable to the proclamations.

*c. First Amendment claims*

In Count Four, the Alliance alleges the TCA, the WCAIIA, and the Amendments to Chapter 27 all infringe on its members' First Amendment right to petition the government by foreclosing the ability of local officials to consider their arguments about the health effects of exposure to radio-frequency emissions. Count Nineteen alleges the TCA infringes the First Amendment free speech rights of Alliance members because local officials have relied on the TCA to ignore and reject health-effect-related speech against new telecommunications facilities. Finally, in Count Twenty the Alliance alleges the Amendments to Chapter 27 violate its members' freedom of speech rights because the Amendments formally adopt the TCA's delegation of regulation of radio-frequency emissions to the FCC.

Although we address whether any of these counts state a claim upon which relief can be granted in Sections III(D)(3), (4), we conclude here that the Alliance advanced sufficient allegations to satisfy the standing requirements. Specifically, the Alliance cites to particular limitations in both the TCA and the Amendments to Chapter 27 precluding local officials from adopting the Alliance's preferred position on radio-frequency emissions. Thus, if a party could advance a First Amendment claim based on government officials not adopting a particular spoken position, then the Alliance alleged an injury fairly traceable to the aforementioned legislative acts, an injury which this court could remedy by striking down the acts.

23

### 3. Summary

In summation, we hold the Alliance failed to allege facts satisfying the standing requirements as to its (1) Count Three takings claim; (2) Count One substantive due process claim; (3) Count Eighteen procedural and substantive due process claims; and (4) Count Two procedural and substantive due process claims.[7] We, however, hold the Alliance has, for purposes of the motion to dismiss stage, satisfied the standing requirements as to its (1) Count One, procedural due process claim; (2) Count Four, First Amendment, right to petition claim; (3) Count Nineteen, First Amendment, free speech claim; and (4) Count Twenty, First Amendment, free speech claim.

### D. *Rule 12(b)(6) Analysis*

We analyze each of the claims surviving our standing inquiry under Federal Rule of Civil Procedure 12(b)(6), concluding the Alliance has not stated any claim upon which relief may be granted.

### 1. Count One Procedural Due Process Claim

As a refresher, in Count One, the Alliance alleges the WCAIIA and the Amendments to Chapter 27 violate its members' procedural due process rights by

---

[7] Where we affirm the dismissal of these claims for lack of standing rather than for failure to state a claim, the dismissal must transform from a dismissal with prejudice to a dismissal without prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("Since standing is a jurisdictional mandate, a dismissal with prejudice for lack of standing is inappropriate, and should be corrected to a dismissal without prejudice."). And it is in the purview of the district court to alter its judgment to reflect this change such that we remand to the district court for that limited purpose. *See id.* at 1219–20.

eliminating notice and hearing requirements prior to approval of new telecommunications facilities. Both the WCAIIA and the Amendments to Chapter 27 involve local control over zoning and land use. Moreover, the WCAIIA and the Amendments to Chapter 27 are also legislative acts. *See Onyx Props. LLC v. Bd. of Cnty. Comm'rs of Elbert Cnty.*, 838 F.3d 1039, 1045–46 (10th Cir. 2016) (stating that "the adoption of a general zoning law is a legislative act" and "adoption of a general zoning ordinance is legislative action"). Long ago, "the Supreme Court held that constitutional procedural due process does not govern the enactment of legislation." *Id.* (citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915)). This is sufficient to foreclose the Alliance's Count One procedural due process claim, and we affirm the district court's Rule 12(b)(6) dismissal of the claim.[8]

---

[8] Even if the Amendments to Chapter 27 were not legislative acts and could be subjected to a procedural due process challenge, the Amendments merely streamlined the procedures for approving new telecommunications facilities by enacting a system whereby Santa Fe adopted preset requirements governing new telecommunications facilities rather than approving such facilities one at a time. *Santa Fe City Code* § 27-2.19(C). Thus, even after the Amendments, Alliance members retained the ability to speak against new telecommunications facilities at meetings adopting or modifying the preset regulations governing those facilities. *See Onyx Props. LLC v. Bd. of Cnty. Comm'rs of Elbert Cnty.*, 838 F.3d 1039, 1045–47 (10th Cir. 2016) (observing due process does not necessitate individual hearings on enforcement of legislative acts, including municipal-wide zoning regulations); *see also Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981) ("[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired."). Accordingly, while the Amendments may have decreased the number of hearings on the matter, they did not eliminate all hearings on the regulation of new telecommunications facilities.

**2.      Count Four Right to Petition Claim**

In Count Four, the Alliance alleges the TCA, the WCAIIA, and the Amendments to Chapter 27 infringe its members' First Amendment right to petition the government because local officials cannot adopt their position in opposition to radio-frequency emissions and because its members cannot prevail in a legal claim seeking compensation for injuries allegedly attributable to radio-frequency emissions. In pertinent part, the First Amendment states: "Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const., amend. I. "The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives. . . ." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011). To further this goal, the right to petition "extends to all departments of the Government" and includes the "right of access to the courts." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). But "the text of the First Amendment [does not] speak in terms of successful petitioning—it speaks simply of 'the right of the people . . . to petition the Government for a redress of grievances.'" *BE & K Const. Co. v. NLRB*, 536 U.S. 516, 532 (2002) (omission in original) (quoting U.S. Const. amend. I).

To be sure, the Alliance alleges the relevant legislative acts prevent its members from succeeding on any of its efforts to petition the Santa Fe government regarding the health effects of radio-frequency emissions, but the amended complaint never identifies a provision of the TCA, WCAIIA, or the Amendments to Chapter 27

26

precluding any individual from, or penalizing any individual for, petitioning the government regarding radio-frequency emissions. Nor could the Alliance identify any such provision, as none exists. And the case law uniformly rejects the contention that the First Amendment guarantees any success when petitioning, rendering the Alliance's Count Four First Amendment claim frivolous. *See CSMN Invs., LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1285 (10th Cir. 2020) ("In fact, the framers recognized this in the First Amendment's text: '[T]he text of the First Amendment [does not] speak in terms of successful petitioning—it speaks simply of "the right of the people . . . to petition the Government for redress of grievances."'" (quoting *BE & K*, 536 U.S. at 532 (quoting U.S. Const. amend. I))). Accordingly, we affirm the district court's Rule 12(b)(6) dismissal of this claim.

### 3. Counts Nineteen and Twenty First Amendment Free Speech Claims

In Count Nineteen, the Alliance alleges the TCA restricts its members' First Amendment right to free speech. And Count Twenty alleges the Amendments to Chapter 27 likewise restrict its members' First Amendment right to free speech. Under the First Amendment, "Congress shall make no law . . . abridging the freedom of speech."[9] U.S. Const. amend. I. Simply put, nothing in the TCA or the Amendments to Chapter 27 punishes, restricts, or prohibits any individual from

---

[9] Through the Fourteenth Amendment, the prohibition on government abridging the right to free speech has been incorporated to cover state and local governmental action. *See Schneider v. State of N.J., Town of Irvington*, 308 U.S. 147, 160 (1939).

27

speaking against radio-frequency emissions.[10] Accordingly, Counts Nineteen and Twenty of the amended complaint do not advance plausible claims, and we affirm the district court's Rule 12(b)(6) dismissal of them.

### III.   CONCLUSION

We affirm the district court's dismissal of the Count One procedural due process claim and the claims advanced in Counts Four, Nineteen, and Twenty because, while the Alliance satisfied standing requirements at the motion to dismiss stage, none of the claims allege facts upon which relief may be granted. We further

---

[10] The Alliance argues it fears that if its members speak out against radio-frequency emissions at a hearing on a new telecommunications facility and Santa Fe does not approve construction of the new facility, a court, in resolving a suit by a telecommunications company, might attribute the denial of approval to public comments about the health effects of radio-frequency emissions. This argument is fallacious for three reasons. First, this asserted fear has not inhibited Alliance members from speaking at public hearings, for the amended complaint alleges Alliance members "have participated in every approval process and have testified to their injuries and losses at every public hearing for every proposed telecommunications ordinance and every proposed telecommunications facility in Santa Fe from 2005 until the present day." App., Vol. I at 36. Second, as the Alliance contends in other counts of its amended complaint, the Amendments to Chapter 27 eliminated hearings on specific new telecommunications facilities. Third, under the TCA and applicable Supreme Court precedent, any court reviewing a locality's denial of approval for a new telecommunications facility has no need to attribute the denial to particular public comments never adopted by the local officials. Rather, a locality's mere failure to document its reasons for denying an application to build a telecommunications facility entitles the telecommunications company to relief. *See* 42 U.S.C. § 332(c)(7)(B)(iii) (requiring that the denial of an application "be in writing and supported by substantial evidence contained in a written record"); *see also T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 300 (2015) ("In order to determine whether a locality's denial was supported by substantial evidence . . . courts must be able to identify the reason or reasons why the locality denied the application.").

affirm the district court's dismissal of the Count One substantive due process claim and the claims in Counts Two, Three, and Eighteen on the alternative ground that the Alliance failed to satisfy the threshold standing requirements to advance these claims. We remand to the district court for the limited purpose of modifying its judgment to reflect that these claims are dismissed without prejudice.

No. 20-2066, <u>Santa Fe Alliance v. City of Santa Fe</u>
**LUCERO**, J., concurring

Though I agree with the bulk of the majority's analysis, I write separately to note my respectful disagreement concerning the Alliance's standing to raise claims against the TCA. Because the TCA limits the decision-making discretion of state and local policymakers in a manner substantially likely to have produced the decisions and policies that caused the Alliance's alleged injuries, I would hold that the Alliance has standing to challenge the statute. The majority's holding to the contrary effectively allows the federal government to evade review by restricting the discretion of state and local officials and then claiming that the ultimate decision was the officials' alone. Rather than create such a loophole, I would affirm on the basis of sovereign immunity.

As the majority explains, the TCA prohibits state and local governments from regulating telecommunications facilities "on the basis of the environmental effects of radio frequency emissions." 47 U.S.C. § 332(c)(7)(B)(iv). Included within the category of "environmental effects" are harms to human health, such as the cancers and seizures that the Alliance asserts its members have suffered due to radio frequency emissions. Because of the TCA prohibition, the regulations challenged by the Alliance could not have been otherwise on the basis of the harms the Alliance alleges.

Though the TCA forecloses considering these significant environmental effects,[1] the majority sees no reason to believe that state and local decision-makers would have

---

[1] We assume these effects are real at the motion to dismiss stage. <u>See</u> <u>Wasatch Equality v. Alta Ski Lifts Co.</u>, 820 F.3d 381, 386 (10th Cir. 2016).

paid them any mind in the absence of the TCA's fetters. The majority concludes that because there are "no allegations in the amended complaint [that] make such an inference plausible," the Alliance lacks standing to challenge the TCA.

To establish standing, a plaintiff must allege "a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." Nova Health Sys. v. Gandy, 416 F.3d 1149, 1156 (10th Cir. 2005). The Alliance meets this burden. It is substantially likely that if radio frequency emissions cause widespread and severe environmental harms, state and local decision-makers would regulate telecommunications facilities differently if not for the TCA. To hold otherwise because the Alliance cannot point to evidence from New Mexico or Santa Fe officials affirmatively declaring they would hypothetically regulate differently in the absence of the TCA is too high a barrier for most plaintiffs to ever satisfy. It also creates a loophole by which the federal government can significantly constrain local governmental decision-making, then escape judicial review of those constraints by arguing the ultimate decision was the local government's and may have been the same even without the constraints. We should not insulate the federal government's efforts to materially shape the decisions of local governments from harms that those efforts plausibly bring about.

Though I would hold that the Alliance has standing to bring claims based on the TCA, I would also hold that those claims fail due to federal sovereign immunity. Sovereign immunity is a general shield for suits brought against the United States, its agencies, and its officers. No one may "pursue a suit against the Federal Government absent a congressional waiver of immunity." Wyoming v. United States, 279 F.3d 1214,

2

1225 (10th Cir. 2002).  In the only potentially relevant exception to that broad shield, Congress waived sovereign immunity for "[a]n action in a court of the United States seeking relief other than money damages and stating a claim that <u>an agency or an officer or employee thereof</u> acted or failed to act in an official capacity or under color of legal authority."  5 U.S.C. § 702 (emphasis added).  Nowhere in the Alliance's claims is it alleged that any agency or officer of the United States acted or failed to act.  The named federal defendant is the United States in its entirety.  The TCA is enforced by the FCC, but there is no allegation that the FCC played any role in the events that led to this suit.  Under the plain text of § 702, the Alliance's claims do not fit within that waiver of sovereign immunity.  See <u>Trudeau v. Federal Trade Comm'n</u>, 456 F.3d 178, 187 (D.C. Cir. 2006) ("[T]he [statute] . . . refer[s] to a claim against an 'agency' and hence waives immunity only when the defendant falls within that category . . . .").

Because I would affirm the district court's dismissal of the TCA-based claims on grounds other than those relied on by the majority, I respectfully concur.