Rucker v. Kubler, 2025 NCBC 65.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV015792-590

MICHEAL RUCKER; KRISTINA
RUCKER; MDR80, LLC; AM
SQUARED, LLC; RUCKER
RESOURCE, LLC; PLATINUM
MANAGEMENT, LLC; and VISION
GROUP REALTY, LLC,

Plaintiffs,

v.

JON PATRICK KUBLER;
STEELPOOL, INC. (d/b/a
STEELPOOL WEALTH
MANAGEMENT, STEELPOOL
INSURANCE SERVICES, and
STEELPOOL ADVISORS); CAPITAL
SYNERGY PARTNERS, INC.;
AKSARBEN EVOLUTION, LLC; AV
BHILL, LLC; CFH TEXAS, LLC;
GREEN SADDLE, LLC;
THUNDERTOP, LLC; KUBLER
CONSULTING, LLC; KUBLER
FINANCIAL, INC.; and MIDWEST
PEG, LLC,

Defendants.

**ORDER AND OPINION
ON DEFENDANT STEELPOOL,
INC.'S MOTION TO DISMISS**

*Kilpatrick Townsend & Stockton LLP, by Dustin T. Greene and Whitney R. Pakalka, for Plaintiffs Micheal Rucker, Kristina Rucker, MDR80, LLC, AM Squared, LLC, Rucker Resource, LLC, Platinum Management, LLC, and Vision Group Realty, LLC.*

*Hall Booth Smith, P.C., by W. Clark Goodman and JT Mlinarcik, for Defendants Steelpool, Inc and Capital Synergy Partners, Inc.*

*Jon Patrick Kubler, pro se.*

*No counsel appeared for Defendants Aksarben Evolution, LLC, AV Bhill, LLC, CFH Texas, LLC, Green Saddle, LLC, Thundertop, LLC, Kubler Consulting, LLC, Kubler Financial, Inc., and Midwest PEG, LLC.*

Conrad, Judge.

1. In this action, Mike and Kristina Rucker claim to have been defrauded by their longtime financial advisor, Jon Kubler. The Ruckers (and a few affiliated entities) have sued not only Kubler but also several companies that he allegedly owns and controls or used to represent. One of these companies, Steelpool, Inc., has moved to dismiss the claims against it on jurisdictional grounds. (*See* ECF No. 16.) The motion is fully briefed, and the Court held a hearing on 2 October 2025.

2. As alleged, the Ruckers met Kubler in the late 1990s. The Ruckers were students at the University of Nebraska at that time; Kubler was a licensed insurance agent and registered investment advisor. After college, the Ruckers moved to North Carolina, where Mike began his career as a defensive lineman for the Carolina Panthers and Kristina became a real estate broker. Throughout this period, and for roughly the next twenty years, they sought financial advice from Kubler, allegedly entrusting him "with complete access to and control over their finances." Although Kubler "surrendered his security licenses" in 2009, he allegedly continued to invest the Ruckers' assets "through Capital Synergy Partners and/or Steelpool" and "made other investment recommendations implemented by Capital Synergy Partners and Steelpool." (Compl. ¶¶ 22–24, 26, 34, 50.)

3. In 2023, the Securities and Exchange Commission began an enforcement action against Kubler, accusing him of running a Ponzi scheme related to a real estate development in Texas. The Ruckers were among the many alleged victims. Once the curtain had been lifted on the Ponzi scheme, the Ruckers began investigating Kubler's management of their finances more broadly and concluded that he had been

swindling them for years. Their complaint alleges, among other things, that Kubler collected generous commissions on an unnecessary life insurance policy for Kristina, skimmed part of the rental income from properties they owned, and disbursed funds from their line of credit for his own use. (*See, e.g.*, Compl. ¶¶ 68, 72, 74, 112, 125.)

4. Convinced that they had been conned by a trusted advisor, the Ruckers sued Kubler and a constellation of entities that they allege to have been involved in his schemes. The Ruckers assert nine claims against Kubler for fraud, securities fraud, breach of fiduciary duty, conversion, and more. They also assert most of these claims against Steelpool on the theory that Kubler's actions "were expressly authorized by . . . Steelpool," that "Steelpool ratified those acts," and that "those acts were committed within the scope of Kubler's employment/representation of . . . Steelpool." (Compl. ¶ 51; *see also, e.g.*, Compl. ¶¶ 154, 166, 172, 173, 179.)

5. The issue here is whether the Ruckers have standing to pursue their claims against Steelpool. "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *Town of Midland v. Harrell*, 385 N.C. 365, 371 (2023) (citation and quotation marks omitted). If a plaintiff lacks standing, then "the trial court lacks subject matter jurisdiction." *Id.*; *see also In re Z.G.J.*, 378 N.C. 500, 504 (2021).

6. "As a general matter, the North Carolina Constitution confers standing on those who suffer harm." *United Daughters of the Confederacy v. City of Winston-Salem*, 383 N.C. 612, 615 (2022). There is no dispute that the Ruckers have alleged financial harm in their complaint. But Steelpool contends that the alleged harm is

not fairly traceable to *its* conduct and, thus, that the Ruckers lack standing to assert claims against it.

7.      Traceability is an essential component of standing in federal court. *See, e.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." (citation and quotation marks omitted)). North Carolina's law is less clear, however, and the parties dispute whether a plaintiff in state court must show that his or her injury is fairly traceable to the defendant's conduct. *See Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*, 376 N.C. 558, 591 (2021) (observing that "the framers of the North Carolina Constitution did not, by their plain words, incorporate the same federal standing requirements"). It is an intriguing question but not one that the Court needs to explore to decide this motion. Assuming North Carolina's standing jurisprudence has a traceability requirement, the Ruckers have satisfied it.

8.      To make its argument, Steelpool goes outside the complaint and offers the affidavit of Andrew Holden, one of its founders. According to Holden, Steepool wasn't an investment firm at all; rather, its "primary business purpose was to recruit registered investment representatives" for Capital Synergy Partners. (Aff. Holden ¶ 3, ECF No. 15.1.) At no point, he asserts, did Steelpool place or manage investments. Nor did it receive fees or commissions related to any transaction described in the complaint. (*See* Aff. Holden ¶ 6.) In addition, Kubler has not been involved with Steelpool since 2019, when Holden bought his interest for a small sum.

(*See* Aff. Holden ¶ 8.)  This evidence, Steelpool contends, conclusively shows that it could not have contributed to the Ruckers' injuries.

9.     At times, a trial court "may consider matters outside the pleadings" in connection with a jurisdictional challenge.  *Harris v. Matthews*, 361 N.C. 265, 271 (2007).  But that is not true when, as here, the jurisdictional challenge implicates an element of the asserted cause of action.  One of the Ruckers' theories is that Kubler was acting on Steelpool's behalf when he defrauded them.  Although Steelpool believes that its evidence clears it of that charge, the Ruckers need not prove agency, ratification, or any other element of their case at the pleading stage.  *See, e.g.*, *McKnight v. Wakefield Missionary Baptist Church*, 2021 NCBC LEXIS 54, at *8 (N.C. Super. Ct. June 14, 2021) (observing that a "challenge to jurisdiction based on an asserted lack of standing does not call upon the Court to adjudicate the case based on its merits" (citation and quotation marks omitted)); *see also Adam v. Barone*, 41 F.4th 230, 236 (3d Cir. 2022) ("While Adam will have to do more to establish causation at the merits stage, her allegations satisfy the traceability requirement of standing."); *Santa Fe All. For Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 814 (10th Cir. 2021) ("[A]t the motion to dismiss stage, a plaintiff can satisfy the 'fairly traceable' requirement by advancing allegations which, if proven, allow for the conclusion that the challenged conduct is a 'but for' cause of the injury.").\*

---

\* *See also, e.g.*, *Hudson v. Boppy Co., LLC*, 2025 U.S. App. LEXIS 16121, at *11 (10th Cir. July 1, 2025) ("The traceability requirement should not be conflated with the merits of a claim for relief."); *Harris v. Lexington-Fayette Urban Cnty. Gov't*, 685 F. App'x 470, 472 (6th Cir. 2017) (unpublished) ("If an attack on subject matter jurisdiction implicates an element of the cause of action, we confine our jurisdictional inquiry to the allegations in the plaintiff's complaint, no matter what evidence a defendant has submitted in attempting to disprove

10.    Accordingly, the Court confines its review to the allegations of the complaint. Taken as true, they show that Kubler "made . . . investment recommendations implemented by Capital Synergy Partners and Steelpool" and that he performed these acts "within the scope of [his] employment/representation of . . . Steelpool." (Compl. ¶¶ 50, 51.)  The complaint goes on to allege that Steelpool and Capital Synergy Partners operated out of the same office space, that the Ruckers attended investment meetings in which they were told "Capital Synergy Partners was part of a larger network or organization run by Steelpool and Mr. Kubler," and that members of the "Steelpool Community" aided Kubler's investment frauds.  (Compl. ¶¶ 41, 48, 77.)  These allegations are not merely conclusory, as Steelpool contends.  If true, they tend to show that Kubler acted on Steelpool's behalf in relation to one or more of the described transactions at issue and that the Ruckers suffered an injury fairly traceable to Steelpool.  That is enough to confer standing on the Ruckers to pursue their claims.  Whether the Ruckers can prove their allegations is a question for a later stage.

11.    For all these reasons, the Court **DENIES** the motion to dismiss.

---

jurisdiction." (cleaned up)); *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (same); *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989) ("Because in this case the challenged basis of jurisdiction, failure to allege injury, is also an element of the cause of action, the proper course is to limit the jurisdictional inquiry to facial scrutiny and reserve factual scrutiny for the merits.").

**SO ORDERED**, this the 22nd day of October, 2025.

              /s/ Adam M. Conrad
              Adam M. Conrad
              Special Superior Court Judge
                for Complex Business Cases