**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 3, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ONYX PROPERTIES LLC, a Colorado
limited liability company; EMERALD
PROPERTIES, LLC, a Colorado limited
liability company; PAUL NAFTEL;
SHAUNA NAFTEL,

     Plaintiffs - Appellants,

and

LOCAL SERVICE CORPORATION, the
Estate of Chapter 11 Bankruptcy in re:
Simon E. Rodriquez, Trustee; KENNETH
G. ROHRBACH; KAREN L.
ROHRBACH; PAUL K. ROHRBACH;
COMPOST EXPRESS, INC., a Colorado
corporation,

     Plaintiffs,

v.

BOARD OF COUNTY
COMMISSIONERS OF ELBERT
COUNTY, in its official capacity,

     Defendant - Appellee.

------------------------------

NATIONAL ASSOCIATION OF HOME
BUILDERS,

     Amicus Curiae.
_____

No. 15-1141

ROBERT QUINN, an individual; KAREN QUINN, an individual; PATRICIA RODENZ, an individual; MICHAEL MCCLENDON, an individual; DAVID AKSLAND, an individual; SEAN MULVIHILL, an individual; STEPHEN MULVIHILL, an individual; EDWIN BAKER, an individual; VIRGINIA BAKER, an individual; STAN LYNN, an individual; EDWARD LOVELACE, an individual; DONNA LOVELACE, an individual; EJL ENTERPRISES, INC., a Colorado corporation; PRAIRIE LAND, LLC, a Colorado limited liability company; CRAIG CLAUSEN, an individual; KENLOU, LLC, a dissolved Colorado corporation; GARY LEVIN, an individual; FIDDLEBACK RANCH, LLC, a Colorado limited liability company; WILLIAM PAUL SUMMERS, an individual; EUGENE ERICKSON, an individual; ANNE ERICKSON, an individual; LORA KRISTA, an individual; REBECCA ARNOLD, an individual; DENNIS LEONARD, an individual; THOMAS MARONEY, an individual; STATION GULCH RANCH, LLC, a Colorado limited liability company; RICHARD O'LEARY, an individual; LINDA O'LEARY, an individual; MORNINGSTAR DEVELOPMENT, LLC, a Colorado limited liability company; AMANDA PINES, LLC, a Colorado limited liability company; AMANDA PINES NORTH, LLC, a Colorado limited liability company; LADERO LAND DEVELOPMENT, INC., a Colorado corporation,

  Plaintiffs - Appellants,

v.

No. 15-1197

2

BOARD OF COUNTY
COMMISSIONERS OF ELBERT
COUNTY,

    Defendant - Appellee.

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. Nos. 1:13-CV-02818-CMA-NYW and
1:10-CV-01482-LTB-KLM)**

_____

James D. Thorburn, The Law Office of James D. Thorburn, LLC, Greenwood Village, Colorado, for Plaintiffs-Appellants.

Josh A. Marks (Melanie B. Lewis with him on the briefs), Berg Hill Greenleaf & Ruscitti, LLC, Boulder, Colorado; for Defendant-Appellee.

Troy R. Rackham, Fennemore Craig, P.C., filed an Amicus Curiae brief for National Association of Home Builders, Denver, Colorado, in support of Appellants.

_____

Before **HARTZ**, **EBEL**, and **MORITZ**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

The plaintiffs in the two cases before us on appeal complain that they were denied due process when the Board of County Commissioners of Elbert County (the Board) required them to rezone their properties before they could subdivide them. They allege that after the Board lost the documents reflecting the prior comprehensive zoning ordinance, it created new documents without following proper procedures for enacting an ordinance and covered up their misconduct. Perhaps these allegations state a claim under

3

Colorado law. We hold, however, that the plaintiffs were not deprived of their right to due process under the United States Constitution.

## I.    BACKGROUND

The essential facts are undisputed. The Board enacted comprehensive zoning regulations on July 5, 1983. The regulations referred to an official county zoning map. By 1997, however, the Board had discovered that its files contained only six pages of the regulations and no zoning map. It therefore authorized Planning Director Kenneth Wolf to research historical zoning information and report his findings in a series of replacement maps and zoning regulations (the Wolf Documents). Although no public proceedings were conducted to approve the Wolf Documents, county officials treated them as authoritative.

Between 1997 and 2008 a number of landowners in the county sought to subdivide their properties into parcels of 35.00 to 59.99 acres. They were informed by county officials that their properties were zoned A-Agriculture and that county regulations required such land to be rezoned as A-1 to be subdivided. The landowners therefore applied to the Board for rezoning, paid the required fees, and obtained approval of their applications. Only after incurring substantial expenses did they become aware that the Board had not formally adopted the regulations and maps in the Wolf Documents that required the rezoning.

The first landowners to file suit were Onyx Properties, LLC and its coplaintiffs, who brought a putative class action in the United States District Court for the District of Colorado (the Onyx Litigation). They sought injunctive relief and damages under 42

U.S.C. § 1983, on the grounds that the Board's actions violated their rights to substantive and procedural due process. The district court denied class certification, and this court declined to grant a petition for permission to appeal that decision. Robert Quinn and 31 other landowners who had been members of the putative class then jointly filed suit against the Board in the same court (the Quinn Litigation) raising the same claims.

The district court in *Onyx* dismissed the substantive-due-process claim on the pleadings and granted summary judgment in the Board's favor on the procedural-due-process claim. *See Onyx Properties v. Bd. of Cty. Comm'rs*, No. 10-cv-01482-LTB-KLM (Consolidated w/ 11-cv-02321-RPM-MJW), 2015 WL 1361393, at \*7 (D. Colo. Apr. 20, 2015). In *Quinn* another judge of the district court initially dismissed the first amended complaint without prejudice for failure to state a claim upon which relief could be granted. *See Quinn v. Bd. of Cty. Comm'rs*, No. 13-cv-02818-CMA-BNB, 2015 WL 3457732, at \*1 (D. Colo. June 11, 2015). The plaintiffs responded with a motion to permit them to submit a second amended complaint, but the court concluded that the amendment would be futile and dismissed both the procedural- and substantive-due-process claims with prejudice. *See id.* at \*1, \*3; *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'rs Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) (leave to amend may be denied as futile if the complaint as amended would be subject to dismissal).

The *Quinn* plaintiffs appeal the district court's dismissal of both their procedural- and substantive-due-process claims. The *Onyx* plaintiffs do not pursue their substantive-due-process claim on appeal, but argue that summary judgment was improperly granted on their procedural-due-process claim.

We have jurisdiction under 28 U.S.C. §1291. We have consolidated the two cases for disposition on appeal and affirm both judgments. We hold that the Board's adoption of the Wolf Documents as the official zoning regulations and maps was a legislative act, so the Due Process Clause required no hearing. And the conclusory allegations of cover-up and misrepresentation in the Quinn Litigation do not present a plausible substantive-due-process claim.[1]

## II.   DISCUSSION

We review de novo a district court's order granting summary judgment, "applying the same standards that the district court should have applied." *Schanzenbach v. Town of Opal, Wyo.*, 706 F.3d 1269, 1272 (10th Cir. 2013) (internal quotation marks omitted). "Summary judgment is appropriate if the pleadings and the record establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* "We [likewise] review the district court's order of dismissal de novo, accepting the complaint['s] well-pleaded factual allegations as true." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1209 (10th Cir. 2000). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a claim for relief must plead sufficient facts to

---

[1] In light of this disposition, we need not address the Onyx plaintiffs' arguments concerning denial of class certification or the prudential standing of a coplaintiff because any potential claims based on the same alleged due-process violations must also fail. *See In re Krause*, 637 F.3d 1160, 1168 (10th Cir. 2011) ("Unlike certain other statutory or constitutional jurisdictional questions, the resolution of a sticky prudential standing question may be bypassed in favor of deciding the case on the merits when it's clear that the appellant will lose there anyway."); *Wiesmueller v. Kosobucki*, 513 F.3d 784, 787 (7th Cir. 2008) (the question of class certification is moot when the claim is resolved on grounds that would be equally applicable to any other class member).

support a reasonable inference that the defendant is liable as alleged. *See Jordan-Arapahoe, LLP v. Bd. of Cty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011).

The Due Process Clause of the Fourteenth Amendment prohibits the state from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." *Hyde Park*, 226 F.3d at 1210. The Board argues that plaintiffs have no constitutional claim because their interest in how their land is zoned is not a "property" interest protected by the Due Process Clause. But it is unnecessary for us to decide this issue because even assuming all plaintiffs possessed a constitutionally protected property interest, they must still be denied relief.[2]

## A. Procedural Due Process

"The essence of procedural due process is the provision to the affected party of *some* kind of notice and . . . *some* kind of hearing." *Moore v. Bd. of Cty. Comm'rs*, 507

---

[2] *Federal Lands Legal Consortium v. United States*, 195 F.3d 1190, 1195 (10th Cir. 1999), suggested that *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 59 (1999), requires us always to address the existence of a protected property interest when considering a due-process claim. "We are bound by the precedent of prior panels absent *en banc* reconsideration or a superseding contrary decision by the Supreme Court." *United States v. Killion*, 7 F.3d 927, 930 (10th Cir. 1993). But there is now contrary Supreme Court authority. *See City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 198 (2003) (declining to decide whether respondents possessed a property interest in building permits because their substantive-due-process claim would fail anyway). Therefore, neither *Federal Lands* nor *Nichols v. Board of Cty. Comm'rs*, 506 F.3d 962, 969 n.2 (10th Cir. 2007), which relied on *Federal Lands* without discussing *City of Cuyahoga Falls*, remains binding on this point.

F.3d 1257, 1259 (10th Cir. 2007) (internal quotation marks omitted). The plaintiffs do not clearly articulate what notice or what hearing they should have received, but we understand their arguments as focusing on the failure of the Board to follow required state procedures for the enactment of a zoning ordinance before it implemented the Wolf Documents as if they were validly promulgated.[3] Colorado law requires that "before the adoption of any zoning resolutions, the board of county commissioners shall hold a public hearing thereon, the time and place of which at least fourteen days' notice shall be given." Colo. Rev. Stat. § 30-28-112.

Violation of state procedural requirements, however, does not in itself deny federal constitutional due process. *See Guttman v. Khalsa*, 669 F.3d 1101, 1115 (10th Cir. 2012) ("A failure to comply with state or local procedural requirements does not necessarily constitute a denial of federal due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause." (brackets and internal quotation marks omitted)); *Rector v. City & Cty. of Denver*, 348

---

[3] The Onyx plaintiffs argue, "Since the Wolf Maps and Wolf Regulations were adopted without any process, and these documents were enforced against the [plaintiffs], the documents took away the [plaintiffs'] property rights to develop their properties in violation of the due process clause." *Onyx Properties, et al. v. Board of County Commissioners of Elbert County,* No. 15-1141, Aplt. Br. at 8. The Quinn plaintiffs' proposed second amended complaint alleges: "Rather than taking the constitutional route in holding a due process hearing to adopt the maps. . . , the [Board] implemented a clandestine policy that [Wolf] would create zoning maps and then sign them himself . . . . The County then represented that the Wolf Maps were the 'official' 1983 maps of the County's 1983 zoning regulations." *Robert Quinn, et al. v. Board of County Commissioners of Elbert County, No. 15-1197,* Proposed Second Am. Compl., Aplt. App. Vol. II at 365 ¶¶ 30-31.

F.3d 935, 947 (10th Cir. 2003) ("It is well established . . . that a state's violation of its own laws does not create a claim under § 1983."); *Norton v. Vill. of Corrales*, 103 F.3d 928, 930 (10th Cir. 1996) ("[T]he result of error in the administration of state law [the failure to properly publish an ordinance], though injury may result, is not a matter of federal judicial cognizance under the due process clause of the fourteenth amendment." (internal quotation marks omitted)); *see also Gryger v. Burke*, 334 U.S. 728, 731 (1948) ("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question."). Hence, two cases relied on by the plaintiffs—*Carter v. City of Salina*, 773 F.2d 251, 255 (10th Cir. 1985), and *Bd. of Cty. Comm'rs v. Rohrbach*, 226 P.3d 1184, 1186 (Colo. App. 2009)—are irrelevant to our analysis because they decided only the requirements of state law.

We therefore turn to what the federal Constitution requires. As the following analysis shows, the plaintiffs have failed to present a federal violation because the adoption of a general zoning law is a legislative act, and the Supreme Court long ago established that the federal Constitution does not require a hearing on the adoption of legislation.

Early in the last century the Supreme Court held that constitutional procedural due process does not govern the enactment of legislation. *See Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915). In *Bi-Metallic* the Colorado Tax Commission and the State Board of Equalization had ordered a 40% increase in the valuation of all taxable property in Denver. *See id.* at 443. The plaintiff sued to enjoin

enforcement of the order on the ground that it had been denied its due-process right to be heard. *See id.* at 444. The Court held that a hearing was not constitutionally required for each affected landowner before the adoption of a generally applicable tax increase. *See id.* at 445. It explained that such a requirement would be too burdensome, and the public had other means of influencing legislative decisions:

> Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule. If the result in this case had been reached, as it might have been by the state's doubling the rate of taxation, no one would suggest that the 14th Amendment was violated unless every person affected had been allowed an opportunity to raise his voice against it before the body intrusted by the state Constitution with the power. . . . There must be a limit to individual argument in such matters if government is to go on.

*Id.* As the Supreme Court wrote decades after *Bi-Metallic*:

> In altering substantive rights through enactment of rules of general applicability, a legislature generally provides constitutionally adequate process simply by enacting the statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements.

*United States v. Locke*, 471 U.S. 84, 108 (1985); *see Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982) (a "legislative determination [terminating a welfare program or granting defenses and immunities to state officials] provides all the process that is due"). "[T]he general theory of republican government is not due process through individual hearings and the application of standards of behavior, but through elective representation,

10

partisan politics, and the ultimate sovereignty of the people to vote out of office those legislators who are unfaithful to the public will." *Rogin v. Bensalem Twp.*, 616 F.2d 680, 694 (3d Cir. 1980).[4]

We recognize that not all actions by municipal boards are legislative. When the action has a limited focus (only a few people or properties are affected) and is based on grounds that are individually assessed, it may be more adjudicative than legislative and therefore subject to traditional procedural requirements of notice and hearing. Thus, *Bi-Metallic* distinguished the Court's earlier decision in *Londoner v. City and Cty. of Denver*, 210 U.S. 373 (1908), which held that constitutional due process required a hearing, because in the earlier case the "board had to determine whether, in what amount, and upon whom a tax for paving a street should be levied . . . [and a] relatively small number of persons was concerned, who were exceptionally affected, in each case upon individual grounds." *Bi-Metallic*, 239 U.S. at 446 (internal quotation marks omitted). In such circumstances the need for additional procedural protections is greater because

---

[4] The following sentence in *Bi-Metallic* may be misleading if read out of context: "In considering this case in this court *we must assume that the proper state machinery has been used,* and the question is whether, if the state Constitution had declared that Denver had been undervalued as compared with the rest of the state, and had decreed that for the current year the valuation should be 40 per cent higher, the objection now urged could prevail." 239 U.S. at 445 (emphasis added). This might be taken as a suggestion that there could have been a due-process violation had the tax assessment been promulgated contrary to state law. But earlier in the opinion the Court had said, "With these suggestions [based on state law] we have nothing to do. They are matters purely of state law." *Id.* at 444. Thus, the "we must assume" language appears to be no more than a statement that the Court assumes that state law was followed because compliance with state law was not pertinent to its analysis. We are aware of no authority that has interpreted the *Bi-Metallic* sentence as stating that a violation of state law constitutes a denial of due process.

11

political remedies are often unattainable by individuals or small groups, *see Ind. Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 710 (7th Cir. 2004), and the grant of procedural safeguards to a few does not impose as great a burden on government. *See Kaahumanu v. Cty. of Maui*, 315 F.3d 1215, 1220–21 (9th Cir. 2003) (decision to grant or deny conditional-use permit was administrative action distinguishable from legislative enactment of a general zoning ordinance).

*Bi-Metallic* controls here because adoption of a general zoning ordinance is legislative action. In distinguishing between legislative and administrative action, some courts have considered "the nature of the decisionmaking body" as elected or appointed; the type of decision (the adoption of a "comprehensive plan" or just the grant of a variance); and whether the action involves "general policy formulations, which are considered legislative, [or] specific applications of previously formulated policy, which are considered administrative." *Developments in the Law—Zoning*, 91 Harv. L. Rev. 1427, 1509 (1978). Others have focused on (1) the "particularity of the impact of the state action," and (2) the factual basis for the action—legislation is typically based on "generalizations concerning a policy or state of affairs" that "do not usually concern the immediate parties but . . . help the tribunal decide questions of law, policy, and discretion," whereas administrative action is typically based on adjudicative facts that "relate with greater specificity to individuals or particular situations." *Id.* at 1510−11; *see, e.g., Hughes v. Tarrant Cty.*, 948 F.2d 918, 921 (5th Cir. 1991) (using these two factors to assess whether action was legislative for purposes of legislative immunity); *Crymes v. DeKalb Cty.*, 923 F.2d 1482, 1485 (11th Cir. 1991) (same); *see also L C & S, Inc. v.*

12

*Warren Cty. Area Plan Comm'n*, 244 F.3d 601, 604 (7th Cir. 2001) ("[T]he generality and consequences[] of an enactment determine whether it is really legislation or really something else."); *Harris v. Cty. of Riverside*, 904 F.2d 497, 501–02 (9th Cir. 1990) ("[T]he character of the action, rather than its label, determines whether those affected by it are entitled to constitutional due process."); *Cherry Hills Resort v. Cherry Hills Vill.*, 757 P.2d 622, 625 (Colo. 1988) ("Legislative action is usually reflective of some public policy relating to matters of a permanent or general character, is not normally restricted to identifiable persons or groups, and is usually prospective in nature.").

Under any of these standards, the adoption of a comprehensive zoning ordinance is a legislative act. A zoning plan is based on community-wide development goals, not on the particular facts of individual situations. *See Developments*, 91 Harv. L. Rev. at 1512–13. It involves the discretionary implementation of prospective policies rather than the application of an existing policy to a specific landowner. *See Rogin*, 616 F.2d at 693. Zoning plans are generally applicable even though their impact may be felt differently by specific landowners. *See id.* at 693 & n.60.

The case law in our fellow circuits reflects this view. *See, e.g.*, *Smithfield Concerned Citizens v. Town of Smithfield*, 907 F.2d 239, 245 (1st Cir. 1990) (enactment of zoning ordinance is a legislative act); *Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 169 (3d Cir. 2006) (municipal body's act of recommending or voting for change in permitted uses in a zoning district is legislative in character); *Jackson Court Condos., Inc. v. City of New Orleans*, 874 F.2d 1070, 1072, 1076 (5th Cir. 1989) (moratorium on establishment of time-share condominiums in residential area was a

13

legislative zoning decision of broad applicability to which no procedural-due-process rights attached); *Dennis v. Vill. of Tonka Bay*, 156 F.2d 672, 674 (8th Cir. 1946) (enactment of zoning ordinance is "legislative in character"); *Kuzinich v. Santa Clara Cty.*, 689 F.2d 1345, 1349 (9th Cir. 1982) ("[T]he enactment of a general zoning ordinance is a legislative act."); *Kentner v. City of Sanibel*, 750 F.3d 1274, 1280 (11th Cir. 2014) (generally applicable, prospective, policy-making zoning ordinance restricting building of docks and piers is a legislative act); s*ee also Calvert v. Safranek*, 209 F. App'x 816, 819 (10th Cir. 2006) ("In Colorado, adopting zoning ordinances is a legislative function entrusted to the boards of county commissioners.").

To be sure, state-required enactment procedures may not have been followed when the Board endorsed the Wolf Documents. But failure to comply with these procedures does not make the Board's action nonlegislative. When the issue is whether a hearing was constitutionally required before taking official action, the focus is on the nature of that action. A procedural failure in the approval process may render legislation invalid under state law but does not change its character as legislation. *See Hoffman v. City of Warwick*, 909 F.2d 608, 620–21 (1st Cir. 1990) (uniform policy decision not to enforce statute that provided seniority benefits "was a legislative-type decision for which no individual hearing was necessary" despite the failure to follow proper state procedures to repeal the statute before ceasing to provide the entitlement); *Smith v. City of Picayune*, 795 F.2d 482, 488 (5th Cir. 1986) (enactment of zoning ordinance without notice or hearing required by state law did not support a procedural-due-process claim). We do not read *Abraham v. Pekarski*, 728 F.2d 167, 174 (3d Cir. 1984), relied on by the plaintiffs,

14

as holding to the contrary because it involved a clearly nonlegislative act—the firing of an employee. *See Acierno v. Cloutier*, 40 F.3d 597, 614 (3d Cir. 1994) ("We reject the notion that our decision in *Abraham* stands for the broad proposition that a mere technical violation of the statutory procedures specified for legislative action, by itself, converts an otherwise legislative action into an administrative action.").

The plaintiffs point to circuit-court decisions requiring notice and a hearing before a zoning change that affects only one or a few parcels. But those decisions do not cast doubt on the legislative nature of general zoning decisions, and at least one other circuit court has held that even such limited zoning changes may be legislative in nature so that no hearing is required. *Compare Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 896 (6th Cir. 1991) (notice and a hearing were required before amending a zoning map that impacted only a few landowners and was targeted at the plaintiff's property, even though a generally applicable policy-based zoning law would not warrant such protections), and *Harris*, 904 F.2d at 502, 504 (although a general zoning plan amendment is a legislative act that "would not ordinarily give rise to constitutional procedural due process requirements," individualized notice was required before a decision to rezone that affected only two landowners, was distinct from the general amendment, and specifically targeted the plaintiff's property), *with L C & S*, 244 F.3d at 604–05 (amendment to zoning ordinance requiring taverns to obtain permission to open in commercial district, which was enacted to prevent plaintiffs from opening a bar, was legislative because the imposition of greater regulation on taverns was a policy decision that would apply to any would-be tavern owners).

15

In any event *Nasierowski* and *Harris* do not assist the plaintiffs here. The plaintiffs do not argue that the Wolf Documents were targeted at them or that the documents were not generally applicable statements of county policy regarding development. On the contrary, they contend that the documents constitute a zoning ordinance subject to state requirements for the adoption of such ordinances. The zoning requirements imposed by the Wolf Documents were of the type that all courts recognize would not be subject to a due-process hearing requirement. We hold that the Board's adoption of the Wolf Documents was a legislative act and that the federal Constitution did not afford the plaintiffs the right to a hearing. This does not mean that they have no remedy for the alleged violation of state procedures. It is just that they must seek that remedy under state law.

**B.      Substantive Due Process**

The Due Process Clause contains a substantive component that bars "certain governmental actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). The plaintiffs allege that the Board's misrepresentation of the Wolf Documents as the official zoning regulations and its cover-up of the manner of their adoption were violations of substantive due process. They are not complaining that a properly enacted zoning ordinance identical to what appears in the Wolf Documents would violate substantive due process. *Cf. Lingle v. Chevron*, 544 U.S. 528, 540–41 (2005) ("[A] municipal zoning ordinance [will] survive a substantive due process challenge so long as it [is] not clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."

16

(emphasis and internal quotations marks omitted)). Rather, they focus on the alleged

misrepresentations and cover-up that the Board employed to enforce the Wolf

Documents. These alleged acts were clearly executive, so we apply principles of

substantive due process that govern executive action.

When analyzing executive action, "only the most egregious official conduct can be

said to be arbitrary in the constitutional sense." *Cty. of Sacramento v. Lewis*, 523 U.S.

833, 846 (1998) (internal quotation marks omitted). Intentionally or recklessly causing

injury through the abuse or misuse of governmental power is not enough. *See Klen v.

City of Loveland, Colo.*, 661 F.3d 498, 513 (10th Cir. 2011). The actions "must

demonstrate a degree of outrageousness and a magnitude of potential or actual harm that

is truly conscience shocking." *Id*. (internal quotation marks omitted).

The restricted scope of substantive-due-process claims reflects "the concern that

§ 1983 not replace state tort law" and "the need to give deference to local policymaking

bodies' decisions." *Id*. This restricted scope is readily apparent in cases involving land

use. The plaintiffs in *Klen*, who were developers attempting to obtain building permits,

*see id.* at 501–02, alleged "that the defendants 'engaged in a continuous campaign of

harassment, deceit, and delay . . . intended to injure [the plaintiffs] . . . in a way

unjustifiable by any government interest,'" *id.* at 511. They claimed that they had

suffered malicious delay in the issuance of building permits, the imposition of conditions

and fees not authorized by law, and retaliatory citations and further delay after they

complained. *See id.* at 511–12 & n.6. We acknowledged that arbitrary deprivation of a

property right may violate substantive due process if the arbitrariness is extreme, but we

17

concluded that the alleged misconduct was not conscience shocking, noting that "[m]any of their complaints are examples of the kind of disagreement that is frequent in planning disputes." *Id.* at 512–13 (internal quotation marks omitted).

Other circuits have made clear how high the substantive-due-process bar is in this context. The First Circuit has "consistently held that the due process clause may not ordinarily be used to involve federal courts in the rights and wrongs of local planning disputes" and has limited relief to "truly horrendous situations." *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir. 1992) (political manipulation of the permitting process did not violate substantive due process); *see also Mongeau v. City of Marlborough*, 492 F.3d 14, 19–20 (1st Cir. 2007) (allegations of hostility and animus motivating the denial of a building permit were not conscience shocking); *cf. Nestor Colon*, 964 F.2d at 47 (suggesting that bribery or threats may violate substantive due process).

*Eichenlaub v. Township of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004), affirmed the dismissal of a substantive-due-process claim based on allegations of unnecessary inspections and enforcement actions, unequal application of subdivision requirements, delayed permits and approvals, and improperly increased tax assessments. The court said that the described misconduct did not "rise sufficiently above that at issue in a normal zoning dispute to pass the 'shocks the conscience test.'" *Id.* It noted that there were no allegations of corruption or self-dealing, interference with constitutionally protected activity on the property, bias against an ethnic group, or a virtual taking of property rights. *See id.*

18

Two circuits have set especially strict standards. The Sixth Circuit has held that in the zoning context even allegations of corruption are insufficient. *See EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 851, 862 (6th Cir. 2012) (denial of rezoning because plaintiff refused to give large donation to local retirement fund did not shock the conscience). And in *Chesterfield Development Corp. v. City of Chesterfield*, 963 F.2d 1102, 1103–05 (8th Cir. 1992), the Eighth Circuit held that there was no violation of substantive due process when the city enforced a comprehensive zoning ordinance that was invalid under state law because the city had failed to provide proper notice before adopting it and had failed to properly file the plan. Although the city did not know the ordinance was invalid at the time, the court stated that "[o]ur decision would be the same even if the City had knowingly enforced the invalid zoning ordinance in bad faith . . . . A bad-faith violation of state law remains only a violation of state law." *Id.* at 1105.

We need not go so far. There is no allegation here of corruption, self-dealing, or bias against any protected group or activity. The proposed second amended complaint conclusorily alleges clandestine activity and a cover-up, but quotes a transcript of a public Board meeting in August 1997 where the loss of the zoning map is disclosed.

The *Quinn* plaintiffs assert that, at a minimum, the question of whether the Board's conduct was sufficiently arbitrary to violate substantive due process was a factual issue that should have gone to a jury. But "[t]he ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges." *Klen*, 661 F.3d at 513. The

district court properly dismissed the substantive-due-process claim and refused to permit the second amended complaint.

## III. CONCLUSION

We AFFIRM the judgments of the district court.