25CA0079 Pine View v BOCC 05-14-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0079
Boulder County District Court No. 24CV30372
Honorable Judith L. LaBuda, Judge

---

Pine View, LLC, a Colorado limited liability company, and CM3 Living Trust, a Minnesota Trust,

Plaintiffs-Appellants,

v.

Board of County Commissioners of the County of Boulder, Colorado,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE BROWN
Freyre and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 14, 2026

---

Dietze and Davis, P.C., Karl F. Kumli, Robyn W. Kube, S. Daniel Rubin, Boulder, Colorado, for Plaintiffs-Appellants

Ben Pearlman, County Attorney, David Hughes, Deputy County Attorney, Erica Rodgers, Assistant County Attorney, Boulder, Colorado, for Defendant-Appellee

¶ 1    Plaintiffs, Pine View, LLC and CM3 Living Trust (collectively, owners), appeal the district court's judgment dismissing their request to review a zoning map amendment made by defendant, the Board of County Commissioners of the County of Boulder (the BOCC).  We affirm.

I.    Background

¶ 2    Owners seek to challenge an amendment the BOCC made to the Boulder County Floodplain Overlay District.  The Floodplain Overlay District provides land use controls necessary to qualify unincorporated areas of Boulder County for federal flood insurance.  The Floodplain Overlay District consists of floodplain zones established by the Federal Emergency Management Agency (FEMA) combined with floodplain zones established by the county.

¶ 3    Owners own and maintain adjoining parcels of agricultural real property located in unincorporated Boulder County.  Owners rely on the Dry Creek Carrier Ditch (the Ditch) to divert water from Baseline Reservoir and South Boulder Creek to irrigate their respective properties.  Owners alleged they are entitled to the diverted irrigation water pursuant to Colorado water court decrees and their shares in the Base Line Land and Reservoir Company.

1

¶ 4     Following severe flooding in 2013, the Colorado General Assembly created and funded the Colorado Hazard Mapping Program (CHAMP), managed by the Colorado Water Conservation Board (CWCB), to update local flood-hazard information and produce new regulatory floodplain maps for the most affected waterways in unincorporated Boulder County. The Ditch was identified in the CHAMP study as an affected floodway. In 2017 and 2018, the county incorporated preliminary CHAMP data into amendments to the Floodplain Overlay District.

¶ 5     In 2019, based on the CHAMP remapping efforts, FEMA released preliminary Flood Insurance Rate Maps (FIRMs). Because the preliminary FIRMs contained minor adjustments from the previously adopted CHAMP maps, the county amended the Floodplain Overlay District to account for the changes.

¶ 6     In July 2023, FEMA released revised preliminary FIRMs that were expected to become effective in 2024. In response, the county determined it needed to amend the Floodplain Overlay District again to reflect the changes made by FEMA. Specifically, the county sought to remove the county floodplain maps included in the CHAMP study and align the Floodplain Overlay District with the

FEMA FIRMs, such that the FIRMs would be the sole regulatory floodplain maps for CHAMP-affected areas.  Doing so would prevent the BOCC from having to amend the county floodplain zones each time FEMA altered the FIRMs; FEMA's changes would be automatically incorporated into the Floodplain Overlay District.

¶ 7     In November 2023, owners received a postcard notifying them of a virtual information session to be held the following month concerning the proposed amendment to the Floodplain Overlay District.  Owners participated in the virtual information session, where they allege they first learned that the Ditch had been included in CHAMP.

¶ 8     In anticipation of a January 2024 hearing before the county's Planning Commission concerning the proposed amendment, owners submitted formal comments to the County Floodplain Administrator explaining that they believed the Ditch had been misclassified. Owners asserted that, because the Ditch is an irrigation facility, a CWCB Irrigation Facility Regulation, Dep't of Nat. Res. Rule 9(E), 2 Code Colo. Regs. 408-1, required the county to enter into an agreement with owners prior to including the Ditch in the

Floodplain Overlay District, but that had not happened. As relevant to owners' arguments, the regulation provides as follows:

- "The CWCB recommends that irrigation facilities (including, but not limited to, ditches and canals) not be used as stormwater or Flood conveyance facilities, unless specifically approved and designated by [the county] and approved by the irrigation facility owners." *Id.*

- "The Flood conveyance capacity of irrigation facilities shall be acknowledged only by agreement between the facility owners and [the county], with review and concurrence from the Colorado Division of Water Resources to ensure that water rights administration needs are properly considered." *Id.*

- "A maintenance easement or agreement shall be in place allowing [the county] maintenance access to the irrigation facility if needed." *Id.*

- "The irrigation facility shall be assumed as running full so that there are no computed Flood reduction benefits downstream of the irrigation facility." *Id.*

¶ 9     In their pre-hearing comments, owners asked the county to remove the Ditch from the preliminary FIRMs and allow them to file a late appeal of the Ditch's floodway designation. The county denied the request, noting that the Ditch had been mapped in a floodplain since 1979, the county did not have the authority to remove the Ditch from the FIRMs, and the FEMA appeal deadlines had passed.

¶ 10    On January 17, 2024, the Planning Commission held a public hearing to consider the Floodplain Overlay District amendment. Owners attended the hearing and participated by providing oral comments. The Planning Commission voted unanimously to recommend the approval of the Floodplain Overlay District amendment to the BOCC.

¶ 11    The BOCC conducted a public hearing to consider the Planning Commission's recommendation on March 26. Before the hearing, owners again submitted written comments raising their concerns with the designation of the Ditch as a floodway. Owners also attended the hearing and participated by providing oral comments. The BOCC voted unanimously to approve the amendment to the Floodplain Overlay District.

¶ 12    In April 2024, owners initiated this action under C.R.C.P. 106, seeking district court review of the BOCC's designation of a floodway over the Ditch in the Floodplain Overlay District.  Owners alleged that the BOCC abused its discretion by (1) determining that the Ditch was not an irrigation facility and (2) designating a floodway over the Ditch without first entering into an agreement with owners regarding its excess flood conveyance capacity and maintenance and without assuming the Ditch is running full.  They alleged that the BOCC exceeded its jurisdiction by designating a floodway over the Ditch without receiving the Colorado Division of Water Resources' concurrence.  And they alleged that the BOCC deprived them of their property rights without due process of law.

¶ 13    The BOCC moved to dismiss owners' complaint, arguing that (1) the court lacked jurisdiction under C.R.C.P. 106 to review the BOCC's adoption of the amendment to the Floodplain Overlay District; and (2) the BOCC did not deprive owners of a legally protected property interest, and, even if it had, the BOCC provided owners with sufficient process.  In a detailed written order, the district court granted the motion, concluding that the BOCC's adoption of the Floodplain Overlay District amendment was a

legislative act that it did not have jurisdiction to review under C.R.C.P. 106 and that owners did "not have a property interest that [gave] rise to a procedural due process claim."

## II.     Analysis

¶ 14     Owners contend that the district court erred by (1) partially denying their request for leave to file a surreply to the BOCC's motion to dismiss; (2) determining that it did not have jurisdiction under C.R.C.P. 106 to review the BOCC's adoption of the amendment to the Floodplain Overlay District; (3) concluding that the BOCC afforded owners sufficient due process; and (4) failing to address owners' request to file an amended complaint.  We address the surreply contention first because if the court erred by partially disallowing the surreply, remand to the district court to consider the additional arguments may have been appropriate.  But we conclude that the court did not err by declining to consider parts of owners' surreply, so we proceed to address owners' remaining contentions.  In the end, we affirm.

### A. Surreply

¶ 15 Owners contend that the district court erred by partially denying their motion for leave to file a surreply to the BOCC's motion to dismiss. We disagree.

#### 1. Applicable Law and Standard of Review

¶ 16 A surreply, if authorized by the court, permits a nonmoving party to respond to new evidence and legal arguments raised for the first time in a moving party's reply brief. *Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 860 (Colo. App. 2007). The trial court has discretion to deny a party's request to file a surreply, "particularly when the court will grant [a moving party's motion] without relying on any new materials that may appear in the moving party's reply brief." *Id.*

¶ 17 We review a trial court's decision to accept or reject a surreply for an abuse of discretion. *Migoya v. Wheeler*, 2024 COA 124, ¶ 23; *see also Conroy v. Vilsack*, 707 F.3d 1163, 1179 n.6 (10th Cir. 2013) ("[A] district court abuses its discretion only when it both denies a party leave to file a surreply *and* relies on new materials or new arguments in the opposing party's reply brief."). A court

8

abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *Migoya*, ¶ 23.

### 2. Additional Background

¶ 18     After the BOCC filed its reply in support of its motion to dismiss, owners moved for leave to file a surreply. In the proposed surreply filed with their motion, owners argued that the BOCC had made three new arguments in their reply that owners had not had an opportunity to address: (1) owners failed to allege that the BOCC had taken or threatened to take any action to stop owners from using their property; (2) the BOCC did not have to comply with the CWCB Irrigation Facility Regulation because the CWCB funded, managed, and approved the remapping process that led to the amended FIRM; and (3) the designation of the Ditch as a floodway did not harm owners or leave them without an available remedy under the county's land use code.

¶ 19     In its dismissal order, the district court granted owners' request to file a surreply regarding the CWCB's management of the remapping process, concluding that the BOCC had not raised the issue prior to its reply. But the court denied owners' request as to the remaining issues, concluding that the BOCC made the

arguments in its motion to dismiss or to address arguments raised by the owners' response.

### 3. The District Court Acted Within Its Discretion by Partially Denying Owners' Motion for Leave to File a Surreply

¶ 20　　Owners contend that the district court abused its discretion by denying their motion for leave to file a surreply, arguing that the court relied on the BOCC's reply arguments to erroneously conclude that "[owners] are not harmed or without a remedy because [owners'] historic manner of operating the ditch will be exempt from [c]ounty regulation and the [land use code] provides a process for future alterations to the ditch." We perceive no abuse of discretion.

¶ 21　　As an initial matter, owners' argument misconstrues the court's order. The portion of the order owners quote as evidence of the court's reliance on the challenged arguments is not part of the court's own conclusions leading to its dismissal of owners' complaint. Rather, the quoted language reflects the court's summary of what owners characterized as the "new arguments" in the BOCC's reply. Owners neglect to identify, nor can we discern, any other portion of the court's order that relies on the challenged

10

arguments as a basis for granting the BOCC's motion to dismiss. *See Olson*, 174 P.3d at 860.

¶ 22    Further, in ruling on the request to file a surreply, the court identified the page numbers of the BOCC's motion to dismiss and owners' response where the challenged issues were briefed by the parties.  Owners do not contend that the court erred in this regard.  And we agree that the challenged arguments are reflected in the parts of the motion and response the court noted and were not raised for the first time in the BOCC's reply.  Thus, we discern no abuse of discretion in the court's partial denial of owners' motion for leave to file a surreply.  *See Migoya*, ¶ 23.

### B.    Jurisdiction Under C.R.C.P. 106(a)(4)

¶ 23    Owners contend that the district court erred by concluding it did not have jurisdiction under C.R.C.P. 106(a)(4) to review the BOCC's adoption of the amendment to the Floodplain Overlay District.  We disagree.

### 1.    Standard of Review

¶ 24    Where, as here, there are no disputed issues of material fact, we review de novo a C.R.C.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.  *Peabody Sage Creek Mining, LLC v.*

11

*Colo. Dep't of Pub. Health & Env't*, 2020 COA 127, ¶ 9. In deciding whether a complaint should be dismissed under C.R.C.P. 12(b)(1), we examine the substance of the claim based on the facts alleged and the relief requested. *City of Aspen v. Kinder Morgan, Inc.*, 143 P.3d 1076, 1078 (Colo. App. 2006). The plaintiff bears the burden of proving the factual basis for the court's exercise of subject matter jurisdiction. *Id.*

### 2. Applicable Law

¶ 25 Under C.R.C.P. 106(a)(4), a district court has jurisdiction to review quasi-judicial actions performed by a governmental body, but it does not have jurisdiction to review the quasi-legislative actions the body performs.[1] *See Jafay v. Bd. of Cnty. Comm'rs*, 848 P.2d 892, 897-98 (Colo. 1993); *Verrier v. Colo. Dep't of Corr.*, 77 P.3d 875, 879 (Colo. App. 2003) ("Legislative and administrative actions are not reviewable pursuant to C.R.C.P. 106(a)(4)."). Specifically, C.R.C.P. 106(a)(4) permits judicial review when "any governmental

---

[1] Municipal governing bodies perform functions that are similar to, though not the same as, "those performed by legislatures and the judiciary, hence the terms 'quasi-legislative' and 'quasi-judicial.'" *Farmers Water Dev. Co. v. Colo. Water Conservation Bd.*, 2015 CO 21, ¶ 15.

body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law."

¶ 26 We decide de novo whether a challenged governmental action was quasi-judicial or quasi-legislative. *Garcia v. Harms*, 2014 COA 154, ¶ 11. The predominate consideration is "the nature of the governmental decision and the process by which that decision is reached." *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village*, 757 P.2d 622, 627 (Colo. 1988). A quasi-legislative action is "usually reflective of some public policy relating to matters of a permanent or general character, is not normally restricted to identifiable persons or groups, and is usually prospective in nature." *Id.* at 625. Conversely, quasi-judicial functions generally involve "a determination of the rights, duties, or obligations of specific individuals on the basis of the application of presently existing legal standards or policy considerations to past or present facts developed at a hearing conducted for the purpose of resolving the particular interests in question." *Id.*

### 3. The District Court Did Not Have Jurisdiction to Review the BOCC's Quasi-Legislative Floodplain Overlay District Amendment

¶ 27    Owners contend that the district court erred by concluding that the BOCC's adoption of the amendment to the Floodplain Overlay District was quasi-legislative and thus not reviewable under C.R.C.P. 106(a)(4).  Owners argue that the BOCC's action was quasi-judicial because it (1) uniquely affected their property and water rights; (2) made an individualized application of law to existing facts; and (3) was preempted by state law.  We disagree.

¶ 28    We conclude that the BOCC's amendment of the Floodplain Overlay District was a quasi-legislative act because it was motivated by public policy, not restricted to an identifiable group, and prospective in nature.[2]  *See Cherry Hills Resort Dev. Co.*, 757 P.2d at 625.  The amendment arose from a decade-long comprehensive effort to research and update regulatory floodplain boundaries with

---

[2] The parties' submissions to the district court and the court's dismissal order cite an unpublished opinion issued by a division of this court, *Lindow v. Board of Commissioners*, (Colo. App. No. 19CA0450, Aug. 20, 2020) (not published pursuant to C.A.R. 35(e)).  Although we do not rely on *Lindow*, we note that our conclusion that the BOCC's amendment to the Floodplain Overlay District was quasi-legislative is consistent with the division's opinion in that case.  *Id.* at ¶ 23.

the stated purpose of using the best data available to protect the public during future flood events and allow property owners to procure flood insurance. The amendment broadly impacted property along 230 miles of stream in unincorporated Boulder County. It was not restricted to identifiable people or groups and was not site-specific. *See Jafay*, 848 P.2d at 898 (zoning regulations were quasi-legislative in part because they did "not apply only to one site, and only to particular parties involved in the litigation"); *Landmark Land Co. v. City & County of Denver*, 728 P.2d 1281, 1284-85 (Colo. 1986) (a municipal mountain-view zoning amendment was quasi-legislative because it was binding on all the land it affected, not just the land occupied by appellants). And it applied prospectively. *City & County of Denver v. Eggert*, 647 P.2d 216, 222 (Colo. 1982) ("Quasi-legislative action is prospective in nature . . . .").

¶ 29 Nonetheless, owners argue that the BOCC's amendment of the Floodplain Overlay District was quasi-judicial because it "adversely affected the protected interests of specific individuals — [owners] — in a manner distinguishable from the more generalized, development-related, impact [it] had on other landowners."

15

Specifically, owners argue that the amendment adversely affects their water-related rights, "which are subject to a well-developed regulatory framework wholly separate from land-use zoning." On this basis, owners attempt to distinguish *Jafay*, in which the supreme court concluded that a county's zoning action was "quasi-legislative in nature based on the prospective nature and broad impact of the resolution." 848 P.2d at 898.

¶ 30    But owners offer no authority, nor are we aware of any, holding that quasi-legislative action becomes quasi-judicial simply because it affects some individuals or groups differently. Instead, "[z]oning plans are generally applicable even though their impact may be felt differently by specific landowners." *Onyx Props. LLC v. Bd. of Cnty. Comm'rs*, 838 F.3d 1039, 1047 (10th Cir. 2016); *see also Jafay*, 848 P.2d at 898 (determining that a county zoning amendment was quasi-legislative despite the appellant's allegations of unique, individualized impacts). And the BOCC's alleged failure to comply with the CWCB Irrigation Facility Regulation when adopting the amendment does not alter the nature of its action. *See Onyx Props. LLC*, 838 F.3d at 1047 (county's failure to comply with state-required procedures for enacting zoning ordinance "may

render legislation invalid under state law but does not change its character as legislation").[3]

¶ 31    Owners also argue that the BOCC's action was quasi-judicial because, in adopting the amendment, the BOCC undertook an analysis of whether the Ditch was an "irrigation facility" under the CWCB Irrigation Facility Regulation. Owners assert that the BOCC took public comments and evidence from the CWCB and county officials and then erroneously determined that the Ditch was not an "irrigation facility" and that the Irrigation Facility Regulation did not apply. Thus, owners argue that the BOCC made "a determination of the rights, duties, or obligations of specific individuals on the basis of the application of presently existing legal standards or

---

[3] Owners argue that *Oborne v. Board of County Commissioners*, 764 P.2d 397 (Colo. App. 1988), supports its claim that the BOCC's action was quasi-judicial because there the division held that a zoning resolution could not address a subject over which another governmental body had exclusive regulatory jurisdiction (as it argues the CWCB does here). But the division in *Oborne* reviewed the denial of an individual application for a permit to drill an exploratory oil well at a specified location, a matter that was undisputedly reviewable under C.R.C.P. 106(a)(4). *Id.* at 398. And the division's preemption discussion addressed the propriety of the governmental action, *see id.* at 401-02, not whether the action was quasi-judicial or quasi-legislative — indeed, those terms appear nowhere in the opinion.

17

policy considerations to past or present facts developed at a hearing," *Cherry Hills Resort Dev. Co.*, 757 P.2d at 625, and thus the nature of the action was quasi-judicial. We are not persuaded.

¶ 32    As an initial matter, the record reveals that the BOCC engaged in conversations concerning whether the Ditch was an "irrigation facility" subject to the procedures in the Irrigation Facility Regulation, but owners fail to cite the precise location in the record where the BOCC expressly resolved the issue. *See* C.A.R. 28(a)(7)(B) (Arguments "must contain . . . citations to the . . . parts of the record on which the appellant relies."). However, assuming that the BOCC impliedly made such a determination by adopting the amendment to the Floodplain Overlay District without negotiating an agreement with owners under the Irrigation Facility Regulation, we conclude that the determination does not alter the overall nature of the BOCC's action.

¶ 33    Case law instructs that "the predominant consideration in determining whether the governmental body has exercised a quasi-judicial function in rendering its decision" "is the nature of the decision rendered." *Cherry Hills Resort Dev. Co.*, 757 P.2d at 627. As discussed, the specific action being challenged by

18

owners is the BOCC's 2024 amendment to the Floodplain Overlay District. The action was broadly applicable and driven by public policy and a comprehensive effort to protect the public from future flood events. It was not an individualized, site-specific decision made after a hearing on an application or appeal by owners. *Cf. id.* at 628 (resolution was quasi-judicial because it "pertained only to the use of the particular site in question, and was not a decision affecting future land use on a city-wide basis"). The fact that the BOCC discussed the Ditch and the CWCB Irrigation Facility Regulation in response to owners' public comments does not change the nature of the BOCC's action.

¶ 34    Finally, owners argue that the BOCC's quasi-legislative authority to enact land use restrictions that affect water rights are limited or preempted by state statutes and administrative regulations. Essentially, owners argue that the BOCC lacked legislative authority to designate a floodway over the Ditch in conflict with water court decrees and CWCB regulations.[4]

---

[4] At oral argument, owners' counsel clarified that this is not a water case involving priorities or adjudications over which the Colorado Supreme Court has exclusive jurisdiction. *See* § 13-4-102(1)(d), C.R.S. 2025.

¶ 35　Owners' argument misses the mark. Whether the BOCC had the authority to amend the Floodplain Overlay District as it did or whether the amendment was preempted by statute or regulation does not speak to the *nature* of the action. *See id.* The court may not reach the merits of owners' arguments or determine the validity of the BOCC's action unless it first has jurisdiction to review the matter. *See Long v. Cordain,* 2014 COA 177, ¶ 10 ("A [district] court may decide only those cases over which it has subject matter jurisdiction.").

¶ 36　Accordingly, we perceive no error in the court's determination that the BOCC's Floodplain Overlay District amendment was quasi-legislative and thus not reviewable under C.R.C.P. 106(a)(4). *See Cherry Hills Resort Dev. Co.,* 757 P.2d at 627.

## C.　Procedural Due Process

¶ 37　Owners contend that the district court erred by dismissing their claim that the BOCC's Floodplain Overlay District amendment deprived them of their property rights without due process of law. We disagree.

### 1.  Standard of Review

¶ 38    A motion to dismiss under C.R.C.P. 12(b)(5) for failure to state a claim upon which relief can be granted tests the formal sufficiency of the claim.  *Lavarato v. Branney*, 210 P.3d 485, 488 (Colo. App. 2009).  To survive such a motion, "a plaintiff must state a claim for relief that is plausible (not speculative) on its face." *Hess v. Hobart*, 2020 COA 139M2, ¶ 11; *see also Warne v. Hall*, 2016 CO 50, ¶ 9.

¶ 39    We review de novo a trial court's ruling on a C.R.C.P. 12(b)(5) motion.  *Hess*, ¶ 11.  We apply the same standards as the trial court, accepting the factual allegations in the complaint as true and viewing those allegations in the light most favorable to the plaintiff. *Id.*; *Patterson v. James*, 2018 COA 173, ¶ 16.  But we need not accept as true legal conclusions couched as factual allegations. *Woodall v. Godfrey*, 2024 COA 42, ¶ 8.  We may consider only the facts that are alleged in the pleadings and any documents that are attached as exhibits or incorporated by reference.  *Hess*, ¶ 11.

## 2. The BOCC's Quasi-Legislative Action Did Not Implicate Owners' Constitutional Right to Due Process

¶ 40 "The essence of due process is basic fairness in procedure." *Jafay*, 848 P.2d at 899 (quoting *deKoevend v. Bd. of Educ.*, 688 P.2d 219, 227 (Colo. 1984)). In determining whether a party was afforded adequate process, a court must consider (1) "whether a property right has been identified"; (2) "whether governmental action with respect to that property right amounts to a deprivation"; and (3) "whether the deprivation, if one be found, was visited upon the plaintiff without due process of law." *Hillside Cmty. Church v. Olson*, 58 P.3d 1021, 1025 (Colo. 2002) (quoting *Fusco v. Connecticut*, 815 F.2d 201, 205 (2d Cir. 1987)). "Whether particular procedures adopted to review determinations affecting property interests satisfy due process standards depends upon the circumstances of the particular case." *Jafay*, 848 P.2d at 899 (citation omitted).

¶ 41 In dismissing owners' due process claim, the district court concluded that owners "did not possess a protected due process property interest" because "procedural guarantees stemming from state law or local ordinance do not create a constitutionally

cognizable property interest." In so concluding, it appears that the court understood owners to contend only that the BOCC deprived them of the procedures under the CWCB Irrigation Facility Regulation without due process of law. *See* Dep't of Nat. Res. Rule 9(E), 2 Code Colo. Regs. 408-1. Indeed, the court explained that owners' "due process violation is based on [their] assertion that the [c]ounty violated the procedure set forth in state laws or rules."

¶ 42 To the extent that owners contend that they have a protected property interest in the procedural safeguards provided by the Irrigation Facility Regulation, we agree with the district court's conclusion. There is no constitutionally cognizable property right in procedures conferred by state laws or local ordinances. *Hillside Cmty. Church*, 58 P.3d at 1026-27 ("[T]here can be no property right in mere procedure," and a governmental body's failure to comply with its own procedural requirements "does not create a violation of constitutional proportions.").

¶ 43 But owners also alleged that the BOCC's Floodplain Overlay District amendment designating the Ditch a floodway interfered with and thus deprived owners of their full property rights. To this extent, we agree with owners that they adequately alleged the

deprivation of a protected property interest. *See Navajo Dev. Co. v. Sanderson*, 655 P.2d 1374, 1377-78 (Colo. 1982) (a priority of right to use water amounts to a property interest that may not be deprived absent due process of law). Nonetheless, owners' due process argument fails.

¶ 44    As we have concluded, the BOCC's action at issue here was quasi-legislative in nature. Our supreme court has consistently held that "'where an administrative agency is acting in a quasi-legislative capacity, there is no [c]onstitutional requirement that the agency provide the opportunity for a hearing to anyone,' even though such a hearing may be held pursuant to other law." *Farmers Water Dev. Co. v. Colo. Water Conservation Bd.*, 2015 CO 21, ¶¶ 19, 29 (citation omitted); *see Jafay*, 848 P.2d at 899 n.10 (when a municipal body is acting in its quasi-legislative capacity,

there is no constitutional requirement for notice and a hearing).[5]

Because quasi-legislative actions do not implicate constitutionally protected due process rights, the BOCC could not have violated owners' due process rights through the quasi-legislative action here. *Farmers Water Dev. Co.*, ¶¶ 19, 29.

¶ 45 This is true even though the legislature has prescribed notice and hearing requirements for zoning amendments. *See* § 30-28-116, C.R.S. 2025; *Jafay*, 848 P.2d at 899; *cf. Hushen v. Gonzales*, 2025 CO 37, ¶¶ 4-5 (clarifying that whether a proceeding involves due process safeguards is a separate inquiry from whether the proceeding is quasi-judicial (or quasi-legislative)). Before a county may adopt a proposed zoning amendment, it must hold a public hearing on the matter and provide the public with fourteen days' notice of its time and location. § 30-28-116. But it is

---

[5] We acknowledge that in *Jafay v. Board of County Commissioners*, 848 P.2d 892, 898-99 (Colo. 1993), the supreme court conducted a due process analysis notwithstanding its recognition that there is no constitutional due process right to notice and a hearing regarding a municipal body's quasi-legislative action. Even so, the court concluded that the procedural requirements in section 30-28-116, C.R.S. 1986, which has not been amended in any substantive manner affecting our analysis, satisfied due process. *Jafay*, 848 P.2d at 899.

uncontested that the BOCC held a duly noticed public hearing concerning its adoption of the Floodplain Overlay District amendment on March 26, 2024. And it is also undisputed that owners provided the BOCC with written comments before the public hearing and were permitted to provide three minutes of public testimony related to their concerns. The process the BOCC afforded owners satisfied the statutory requirements. *See id.*; *see also Jafay*, 848 P.2d at 899 (compliance with the procedures in section 30-28-116 satisfies due process).

¶ 46    Nevertheless, owners argue that the minimal notice requirements contained in section 30-28-116 are "grossly insufficient" and that "more specific statutes and regulations regarding notice and process [were] applicable to the County's [designation] of the [D]itch as a floodway." Aside from pointing us to a string of water law statutes they claim are controlling, *see* §§ 37-92-302, -305, C.R.S. 2025 — despite conceding at oral argument that "this is not a water rights case" — owners neglect to explain why and to what extent due process demands these procedures apply to the BOCC's Floodplain Overlay District amendment. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d

582, 604 (Colo. App. 2007) (we do not address underdeveloped and conclusory arguments raised on appeal).

¶ 47    Owners argue that, had they "been provided with proper notice regarding CHAMP, or earlier notice of the [BOCC]'s intent to designate the Ditch as a new floodway," they would not have been deprived the opportunity to appeal the FIRM during FEMA's appeal process.[6]  Thus, owners appear to assert a due process violation stemming from a lack of notice of some earlier part of the CHAMP or FEMA FIRM process.  But Owners did not allege and have not sufficiently explained on appeal what specific state or federal action

---

[6] Owners also contend that the BOCC's notice of its Floodplain Overlay District amendment was insufficient because the BOCC referred to the Ditch by several different names throughout its remapping process.  It is uncontested that during the county's virtual information session held in December 2023, owners understood that the Ditch was included in the BOCC's planned Floodplain Overlay District amendment.  Owners then attended and participated in each public hearing the county held to consider the matter.  Thus, the record does not support the contention that the various names used for the Ditch adversely impacted the adequacy of the notice afforded to owners by the BOCC or owners' ability to participate in the duly noticed proceedings.  *See Gessler v. Grossman,* 2015 COA 62, ¶ 53 (insufficient notice does not require reversal unless the complaining party can show that they were prejudiced by the deficiency).

required notice, what notice or opportunity to be heard should have been provided, or when those procedures were required. *See id.*

¶ 48    We conclude that the district court did not err by dismissing owners' due process claim under C.R.C.P. 12(b)(5).

### D.    Request to Amend Complaint

¶ 49    Owners contend that the district court erred by failing to address their "motion" for leave to amend their complaint. On appeal, owners essentially argue that, since the court dismissed their C.R.C.P. 106(a)(4) claim, they should have been able to challenge the Floodplain Overlay District amendment through a claim for declaratory relief under C.R.C.P. 57.

¶ 50    But owners did not file a motion to amend their complaint. Instead, in their response to the BOCC's motion to dismiss, owners asserted that the motion should be denied or, "alternatively, [that owners] should be afforded the opportunity to amend their Amended Complaint to supply any additional facts the court deems necessary." Owners did not pursue the request further, and the district court did not address it in its dismissal order. We conclude that owners failed to preserve this appellate contention.

¶ 51 An issue is preserved for appeal when it is brought to the court's attention and the court has an opportunity to rule on it. *In re Marriage of Turilli*, 2021 COA 151, ¶ 12. Unless the court orders otherwise, any motion involving a contested issue of law is to be made in writing and supported by legal authority. *See* C.R.C.P. 121, § 1-15(1)(a). "A motion shall not be included in a response or reply to the original motion." C.R.C.P. 121, § 1-15(1)(d).

¶ 52 Owners' request for leave to file an amended complaint, made in a single sentence at the end of their response to the BOCC's motion to dismiss, did not constitute a motion. *See Patterson*, ¶ 10 (A plaintiff "[s]imply suggesting in other motions that [they] would amend [their] complaint if the court believed the complaint was unclear is not a motion for leave to amend."). And even if the request constituted a motion, owners did not obtain a ruling on it. *See id.* at ¶ 11 (if the moving party fails to secure a court ruling on a matter they urge, the party waives or abandons that argument on appeal). Because owners made no motion and secured no ruling, we conclude that this contention is unpreserved and decline to address it further. *See Salazar v. Pub. Tr. Inst.*, 2022 COA 109M, ¶ 35.

### III. Disposition

¶ 53    We affirm the district court's judgment.

JUDGE FREYRE and JUDGE SCHUTZ concur.